[No. C002522. Third Dist. Apr. 15, 1988.]

CALIFORNIA AVIATION COUNCIL et al., Plaintiffs and Appellants, v.
COUNTY OF AMADOR et al., Defendants and Respondents;
FHA PROPERTIES, INC., et al., Real Parties in Interest and Respondents.

COUNSEL

Jay C. White for Plaintiffs and Appellants.

John F. Hahn, County Counsel, for Defendants and Respondents.

Rishwain, Hakeem & Ellis, Michael E. Hakeem and Ron Stein for Real Parties in Interest and Respondents.

OPINION

MARLER, J.—Plaintiffs California Aviation Council and Carl Borgh appeal from a judgment denying them a writ of mandate to set aside a negative declaration under the California Environmental Quality Act (CEQA).[1] Plaintiffs contend that the trial court erred in denying their petition on the ground they failed to exhaust their administrative remedies. We do not agree, and affirm the judgment.

FACTS

The County of Amador (County) owns and operates Westover Field, a public general aviation airport located in an unincorporated area of the county known as Martell. Real party in interest, FHA Properties, Inc. (FHA) applied for rezoning and subdivision for residential and commercial development of a 237-acre parcel (Hilltop Center) in Martell approximately 5000 feet from Westover Field.

A public hearing was held on the project on January 28, 1986, before the Amador County Planning Commission. The commission voted "to deny without prejudice" the necessary approvals due to "insufficient information to base a decision upon."

FHA appealed the commission's denial of project approval to the Board of Supervisors of Amador County (Board). On April 15, 1986, the Hilltop

[1] Public Resources Code, division 13, section 21000 et seq.

Center proposal came before Board for the purposes of determining whether or not to require an environmental impact report under CEQA for the project, rezoning to allow the development, and approval of a tentative subdivision map. Board adopted a negative declaration under CEQA[2] and approved the project.

This action challenging Board's decision was commenced on May 16, 1986. Plaintiffs are the California Aviation Council (CAC), a nonprofit public benefit corporation organized under the laws of California, the main purpose of which is the preservation and enhancement of California's public airport system, and Carl Borgh, a resident of Amador County who owns and operates an aircraft based at Westover Field. Among other things, plaintiffs sought a temporary restraining order and preliminary and permanent injunctions restraining Board and real parties in interest from undertaking any construction or development, issuing any approvals or permits, or taking any other action to implement the Hilltop Center project pending full compliance with CEQA.

Both County and FHA answered plaintiffs' petition. The matter was then tried before the court. Upon consideration of the evidence, the trial court concluded the administrative record does not support the adoption of the negative declaration. However, the trial court also concluded plaintiffs had failed to satisfy the requirements of Public Resources Code section 21177, which requires a person to exhaust his administrative remedies before commencing an action under CEQA. Consequently, judgment was entered in favor of County. This appeal follows.

### DISCUSSION

■■ Plaintiffs contend the trial court erred in denying their petition on the ground they failed to exhaust their administrative remedies. Plaintiffs concede they did not appear before Board or otherwise participate in the administrative proceedings. Nevertheless, they contend they come within an exception to the exhaustion doctrine. The case thus centers on the doctrine which requires a party to exhaust his administrative remedies before the court will act to grant him relief and the exceptions to the exhaustion doctrine.

■■ The requirement of exhaustion of administrative remedy is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its

---

[2] A negative declaration is a written statement by the responsible public agency that a proposed project will not have a significant impact on the environment and does not require the preparation of an environmental impact report. (Pub. Resources Code, § 21064.)

special jurisdiction. ■ If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, pp. 264-265.) Consequently, the requirement of exhaustion is a jurisdictional prerequisite, not a matter of judicial discretion. (*Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111 [122 Cal.Rptr. 282].)[3]

■ The exhaustion doctrine bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all; it also operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to "exhaust" the remedy available to them in the course of the proceeding itself. (See *Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d at p. 112.)

Prior to 1984 the courts had recognized certain exceptions to the exhaustion of administrative remedies doctrine in cases brought pursuant to CEQA.

In *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 267 [104 Cal.Rptr. 761, 502 P.2d 1049] the Supreme Court held the doctrine could not be employed to bar suit by a class[4] not organized at the time of the administrative appeal where individuals represented by the class had presented their views to the administrative agency.

In *Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d 105, the plaintiffs had challenged the defendant's conditional use permit and tentative subdivision map on the ground the defendant had failed to prepare an environmental impact report. Although numerous named persons had appeared at the hearings and protested the proposed permit, the plaintiffs were not among them. Notice of the hearings in that case appears to have been given only to adjacent property holders. (*Id.,* at p. 113, fn. 3.) There was no evidence that notice of the hearings was given the plaintiffs in any form. (*Ibid.*) The court concluded the plaintiffs were

---

[3] The requirement cannot be overcome by stipulation between the parties or by admission. (*Miller* v. *Department of Alcohol Bev. Control* (1958) 160 Cal.App.2d 658, 663-664 [325 P.2d 601].)

[4] Plaintiff "Friends of Mammoth" was "an unincorporated association of hundreds of resident and nonresident owners of lots or mountain residents at Mammoth Lakes, Mono County, California." (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 253, fn. 2.)

acting in the public interest and were asserting more than privately held grievances. "Application of the exhaustion doctrine against them, by reason of their 'default' in the administrative proceeding to which they were not 'parties' at all," the court reasoned, "would mean in effect the imputation of their 'default' to the public in the absence of any factual basis for such imputation. In general, the doctrine would thus operate to bar the public from redressing a public wrong; specifically, it would burden the public of the Town, in perpetuity, with the illegal zoning of a substantial area of the community by insulating the zoning action from judicial review." (*Id.,* at p. 114.)

The *Corte Madera* case was in turn considered by the *Supreme Court in Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664]. There the plaintiffs contended, in reliance on *Corte Madera,* that they should be excused from the requirements of the exhaustion doctrine because they were public interest organizations seeking to further public, rather than private, rights. (*Id.,* at pp. 417-418.) The defendants suggested the *Corte Madera* decision was inconsistent with established exhaustion of remedies authorities and should not be followed. The Supreme Court found it unnecessary to pass on the validity of the *Corte Madera* holding. (*Id.,* at p. 418.) The court noted that in *Corte Madera* the public interest litigants had not participated in or received any notice of the relevant administrative proceedings and contrasted that situation with the case at bench. The plaintiffs in *Sea & Sage* did have notice of the administrative proceedings and actively participated at every stage of the hearing process. Under these circumstances, the court held, plaintiffs' failure to exhaust their administrative remedies could not be excused. (*Ibid.*)

In 1984 the Legislature codified the exhaustion of administrative remedies doctrine in CEQA cases in Public Resources Code section 21177. (Stats. 1984, ch. 1514, § 14.) That section provides in relevant part: "[¶] (a) No action may be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person. [¶] (b) No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing. [¶] (c) This section does not preclude any organization formed after the approval of a project from maintaining an action pursuant to Section 21167 if a member of that organization has complied with subdivision (b). [¶] (d)[5] . . . [¶] (e) This section does not apply when there was no public hearing or other opportunity for members of the public to raise objections prior to the approval of the project or when the public agency failed to give the notice required by law."

---

[5] Subdivision (d) provides that section 21177 does not apply to the Attorney General.

■ Were we confronted only with the clear and unambiguous language of the statute itself we would necessarily conclude a CEQA action may not be maintained by a person who did not personally object to the approval of the project by presenting the alleged grounds for noncompliance with CEQA to the public agency orally or in writing, unless the person comes within an exception set forth in either subdivision (c) or (e).

However, here the task of construing section 21177 is complicated by the inclusion of a declaration of legislative intent in the statute which added section 21177 to the Public Resources Code. ■ ■ ■ ■ ■ Section 14.5 of Chapter 1514 of the statutes of 1984 provided: "It is the intent of the Legislature in adding Section 21177 to the Public Resources Code in Section 14 of this act to codify the exhaustion of administrative remedies doctrine. It is not the intent to limit or modify any exception to the doctrine of administrative remedies contained in case law."[6]

Therefore it appears that the exceptions to section 21177 are not only those codified in subdivisions (c) and (e), but, as relevant to this case, the exception set forth in *Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d 105.

Thus, to be excused from their failure to exhaust administrative remedies plaintiffs here must show one of the following: (1) one of the plaintiffs is an organization formed after the approval of the project and a member of the organization objected to the approval of the project orally or in writing (§ 21177, subd. (c)); (2) there was no public hearing prior to the approval of the project, or the public agency failed to give the notice required by law (§ 21177) subd. (e)); or (3) they are members of the public addressing a public wrong and no notice of the proceeding was given them in any form. (*Environmental Law Fund Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d at pp. 111-114.)

■ Carl Borgh, one of the plaintiffs herein, is an individual and not an organization. The California Aviation Council is an organization in exis-

---

[6] County and real parties in interest have moved the court to take judicial notice of certain legislative material relating to Assembly Bill 2583. The court may consider pertinent legislative history and take judicial notice of it. (Evid. Code, §§ 459, subd. (a)(2), 452, subd. (c); see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218-219 [185 Cal.Rptr. 270, 649 P.2d 912]). All of the materials presented, however, support the conclusion that section 21177 was intended to preclude the maintenance of an action by a person who did not personally object to the approval of the project by presenting the alleged grounds for noncompliance with CEQA to the agency orally or in writing. None of the materials contains any discussion of section 14.5 of the bill. The materials are therefore not relevant to a consideration of how section 21177 may be modified by the declaration of legislative intent contained in section 14.5.

tence on October 9, 1982, long before the administrative proceedings here at issue were held in 1986.[7] Therefore exception (1) is unavailable to both CAC and Borgh.

The remaining exceptions available to plaintiffs are to show that Board failed to give the notice required by law, or that they are members of the public addressing a public wrong and no notice of the hearing was given them in any form.

With respect to the adoption of a negative declaration, the CEQA guidelines[8] provide for public notice in relevant part as follows: "[¶] (a) Notice that the lead agency proposes to adopt a negative declaration shall be provided to the public within a reasonable period of time prior to adoption by the lead agency of the negative declaration. Notice shall be given to all organizations and individuals *who have previously requested such notice* and shall also be given by at least one of the following procedures: [¶] (1) Publication at least one time by the lead agency in a newspaper of general circulation in the area affected by the proposed project. [¶] (2) Posting of notice by the lead agency on and off site in the area where the project is to be located. [¶] (3) Direct mailing to owners of property contiguous to the project as such owners are shown on the latest equalized assessment roll." (Cal. Admin. Code, tit. 14, § 15072; italics added.)

In this case, evidence was introduced to show that notice of the hearing of the Board of Supervisors and of Board's intention to adopt a negative declaration for the Hilltop Center project was published in a newspaper of general circulation in Amador County. There is nothing in the record to suggest that either Borgh or CAC had previously requested notice but failed to receive it. Board gave notice of its intent to adopt a negative declaration as required by law and in a form calculated to come to the attention of members of the public, including Borgh and CAC, and to provide them with sufficient information on the matter to permit them to decide whether or not to participate in the proceedings. (See *Lent* v. *Tillson* (1887) 72 Cal. 404, 413-414 [14 P. 71].)

The remaining case law exception which may be relevant here involves the issue of *standing* required by section 21177, subdivision (b). Plaintiffs do

[7] Pursuant to plaintiffs' motion therefor, we take judicial notice of the Certificate of Amendment of the Articles of Incorporation of the California Aviation Council, an official record of the Office of the Secretary of State. (See *People* v. *Haugh* (1963) 216 Cal.App.2d 603, 606 [31 Cal.Rptr. 74].) It shows CAC was in existence on October 9, 1982. In all other respects plaintiffs' motion for judicial notice is denied.

[8] Under CEQA the Office of Planning and Research is required to prepare and develop guidelines for the statute's implementation by public agencies. (Pub. Resources Code, § 21083.) The guidelines are contained in California Administrative Code, title 14, section 15000 et seq.

not contend they personally appeared at the administrative hearings. Plaintiffs' reliance on *Resource Defense Fund* v. *Local Agency Formation Com.* (1987) 191 Cal.App.3d 886 [236 Cal.Rptr. 794] is misplaced. In that case the court recognized at page 894 that for the doctrine to be satisfied the exact *issues* must have been presented to the administrative body, citing *Coalition for Student Action* v. *City of Fullerton* (1984) 153 Cal.App.3d 1194, 1197 [200 Cal.Rptr. 855]. These cases, however, do not hold that if the *issue* requirement is satisfied (§ 21177, subd. (a) as applicable to this case) the *standing* to sue requirement is also obviated. Plaintiffs must also plead and prove a judicial exception to the *standing* requirement. Plaintiffs rely on *Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d 105, claiming they are members of the public seeking to redress a public wrong. Whether or not the allegations of plaintiffs' petition were sufficient to bring them within the exception is irrelevant. The allegations were denied in the answer filed, and plaintiffs concede no evidence was adduced on the issue. Plaintiffs' position fails from lack of proof. (*Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 902 [224 Cal.Rptr. 922].) The trial court so found and was obviously correct in concluding plaintiffs had failed to exhaust their administrative remedies and are precluded from pursuing this action.

The judgment is affirmed.

Puglia, P. J., concurred.

**BLEASE, J.**—I concur in the judgment and in the holding of the majority opinion that Public Resources Code section 21177 codifies the rule of *Environmental Law Fund. Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282] and that of *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664]. Indeed, there is no other conclusion to come to, for that is what a codicil to the section says it does.

However, the opinion then fails to harmonize the case law with the language of section 21177, as we are instructed to do, and uncritically suggests, without analysis of their material facts, that this case might be resolved on the ground that plaintiffs failed to exhaust an administrative remedy. That suggestion misses the point of the codification. For, neither *Environmental Law Funds Inc.* nor *Sea & Sage Audubon Society, Inc.* sanctions that characterization; rather they compel the opposite conclusion.

The dispositive issue is one of standing, which the opinion does properly address and upon which the judgment in this case wholly rests.

I detail the reasons for these conclusions.

The majority opinion suggests that section 21177 bars plaintiffs' action in this case. It does not. Section 21177 provides, in subdivision (e), that it "does not apply when there was no *public hearing or other opportunity* for members of the public to raise objections prior to the approval of the project . . . ." (Italics added.) I read that language to apply only when the opportunity provided by a public hearing process meets the requirements for an appropriate administrative *remedy* laid down in *Environmental Law Fund, Inc., supra,* and *Sea & Sage Audubon Society, Inc., supra.* I do so pursuant to the explicit directions of section 14.5 of the measure by which section 21177 was enacted.

It states that the "intent of the Legislature in adding Section 21177 . . . [is] to *codify* the exhaustion of administrative remedies doctrine." (Stats. 1984, ch. 1514, § 14.5, p. 5345; italics added.) It further provides that "[i]t is not the intent [of the legislation] to limit or modify *any exception* to the doctrine of administrative remedies contained in case law." (*Ibid.*; italics added.) "We are thus directed to read [section 21177] with reference to a specific common law rule." (*Cantor* v. *Anderson* (1981) 126 Cal.App.3d 124, 129 [178 Cal.Rptr. 540]; citations omitted.) That rule has to do with the law of administrative remedies as it preceded the enactment of section 21177.

As applicable here, it is embodied in two cases, *Environmental Law Fund, supra,* 49 Cal.App.3d 105 and *Sea & Sage, supra,* 34 Cal.3d 412. The majority opinion agrees that these cases provide binding interpretive directions. However, the opinion fails to examine their facts, which tell us the administrative *remedies* which were made available to the plaintiffs in those cases and which therefore tell us of what such a remedy consists.

Each case concerned an ordinance which provided that the decision of a planning commission involving a CEQA decision could be *appealed* to another *administrative body* by the applicant or *"any person aggrieved"* (*La Costa Beach Homeowners Assn.* v. *Wayne, post,* 89 Cal.App.3d at p. 330) or *"any [other] interested"* party or person. (See *Environmental Law Fund, supra,* 49 Cal.App.3d at p. 111; *Sea & Sage Audubon Society, supra,* 34 Cal.3d at p. 419.) The implicit question in each case was whether the right of appeal thereby provided was an administrative *remedy* which must be exhausted as a condition to seeking judicial review of the final administrative action by a member of the public affected by the decision (i.e., one who had standing to do so).

As the opinion in *Environmental Law Fund, Inc.* notes: "[t]ypically, or invariably, . . . the person seeking to exercise a judicial remedy has been a

*party* to the administrative proceeding involved—either as an individual or as a member of a limited group of persons identically situated—and the administrative action of which he complains in court has adversely affected a right or rights held personally and exclusively by himself or in common with other members of the group." (49 Cal.App.3d at p. 112; italics added.) The opinion further says that "we have found [no cases] on the question whether judicial review of administrative action is barred when sought by a person who did not pursue an administrative remedy in a proceeding to which he was not a party." (*Id.,* at p. 113, fn 4.) The opinion notes that the plaintiffs were not among the persons who appeared at the hearings (nor did they have notice of them) and therefore were not persons who had a *right to appeal* the decision of the planning commission. (The majority opinion lays exclusive stress on the failure of notice, but that was but one of the necessary conditions to be met.) The assumption which is implicit in the case is that a person, by appearance at the planning commission proceedings, became a *party* to the *appellate* administrative proceeding by virtue of the right of appeal conferred thereby. However, the plaintiffs, not having appeared at the planning commission proceedings, had no such appellate remedy and thereby did not become parties. Accordingly, consistent with the general law of exhaustion of administrative remedies, the case held that "the failure of a private person to exhaust [a potential] administrative remedy, against governmental action taken in an administrative proceeding to which he was not a party, does not bar him from seeking judicial relief from such action by way of enforcing rights which he holds as a member of the affected public." (*Id.,* at p. 114.)

The court in *Sea & Sage Audubon Society, Inc., supra,* did not disturb this holding. Rather, it said that it had "no occasion . . . to pass on the validity of the *Corte Madera* holding itself, because . . . in any event, . . . . a public interest litigant should not be barred from judicial relief under the exhaustion doctrine when it had not participated in, nor received any notice of, the relevant administrative proceedings." (34 Cal.3d at p. 418.) That was not the case with the plaintiffs in *Sea & Sage.* "In this case, *by contrast,* plaintiffs did have notice of the administrative proceedings and actively participated at every stage of the hearing process." (*Ibid.*) The court implied that the plaintiffs, having so participated, gained the remedy of a right of appeal which they failed to exercise. It said: "*Indeed . . . at both the planning commission hearing and the city council meeting plaintiffs were explicitly reminded of the available administrative appeal.* Under these circumstances, plaintiffs' failure to exhaust their administrative remedies cannot be excused under *Corte Madera.* (Cf. *La Costa Beach Homeowners Assn.* v. *Wayne* (1979) 89 Cal.App.3d 327, 331 [152 Cal.Rptr. 355].)" (*Ibid.*; italics added.). It should be noted that in the *La Costa* case the "applicable

administrative regulations provided for an appeal . . . by 'any person aggrieved by approval of a permit . . . .' " (*La Costa, supra,* at p. 330.) That included the association of public persons who were plaintiffs in the judicial action, but failed to exhaust their administrative appeal rights. (*Ibid.*)

The majority opinion not only fails to link up the language of section 21177 with the interpretive directions imposed upon us, but completely ignores the active participation by the plaintiffs in the administrative proceedings in *Sea & Sage* which gave rise to the *remedy* of administrative appeal which they failed to exhaust. In each of these cases the plaintiffs had a potential remedy of administrative appeal triggered by their participation in the planning commission proceedings which, in *Sea & Sage* and *La Costa,* they failed to exhaust. It was this failure which was held to bar judicial relief.

Thus, to read section 21177 consistent with these cases requires that the exception in subdivision (e), providing that the section "does not apply when there was no public hearing or other opportunity for members of the public to raise objections prior to the approval of the project," must be read as limited to cases in which there was a public hearing by which, through participation, the persons so appearing gained the "opportunity" of a right of administrative appeal. If no such participation occurs, or if no such right accrues by participation, there is no administrative *remedy* to be exhausted. This reading is consistent with the general law of exhaustion of administrative remedies.

Ordinarily we use the word remedy as meaning a device to redress a wrong. It is decidedly inappropriate to speak of remedying a wrong which has not occurred and may not occur. Prior to the adoption of a negative declaration under the scheme here in issue there is no wrong to be remediated. Hence, the mere public opportunity to participate in an administrative proceeding prior to the adoption of a negative declaration is not a remedy. The exhaustion of administrative remedies doctrine has never applied where there is no available administrative remedy. (See e.g. *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 690-691 [94 Cal.Rptr. 421, 484 P.2d 93]; *Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 945, fn 3 [237 Cal.Rptr. 191]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 238.)

This semantic point mirrors practical considerations. Most of the time we may reasonably expect administrative agencies to obey the law. Indeed, courts are directed to assume that such is the case. Prior to an unlawful administrative act, the incentive of a member of the public to participate in

an administrative proceeding to assure that the law will be followed is slight. It is an artificial constraint to bar judicial remediation of such unlawful acts to members of the public who have neither the time nor resources to attend all of the government functions at which wrongful action theoretically might be taken. It is unfair and unwise to penalize the public for proceeding on the expectation that the law will be obeyed.

However, once a wrongful administrative action has been taken the focus of the affected members of the public is sharpened. If some reasonable administrative remedy, such as the right to appeal the action of a planning commission, were afforded to challenge such improper action the doctrine of administrative remedies would bar suit by litigants who failed to employ it. (See generally, *Friends of Mammoth* v. *Bd. of Supervisors* (1972) 8 Cal.3d 247, 267 [104 Cal.Rptr. 761, 502 P.2d 1049].) But that is not the case generally in the procedural scheme applicable to the adoption of negative declarations under CEQA. It must be remembered that a negative declaration bypasses the process by which the public is informed through an environmental impact statement of the adverse environmental consequences of a project. The interest served by such a statement is the interest of informing members of the public who are not parties to the administrative proceeding by which the project is approved. However, the right of a person to appear in administrative proceedings leading to the adoption of a negative declaration under CEQA is not properly speaking an administrative remedy which must be exhausted.

I part company with the majority opinion to the extent that it suggests that there was an administrative remedy in this case which the plaintiffs failed to exhaust. This case falls outside *Sea & Sage* since the plaintiffs failed to participate at any stage of the proceedings; nor is there any indication in the record that a local ordinance provided a right of appeal to a public participant in the planning commission hearings.

Nonetheless, the plaintiff must plead and prove facts showing standing, i.e., that he is a person entitled to judicial relief. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 856.) This requirement is sometimes confused with the entirely separate issue of exhaustion of administrative remedies. (See *Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899 [224 Cal.Rptr. 922].) A person lacking standing may not bring an action notwithstanding that an available administrative remedy was otherwise pursued.

Here, plaintiffs concede that they (unaccountably) failed to adduce any evidence at trial showing standing. Accordingly, the trial court correctly

ruled that plaintiffs had failed to establish a claim despite the apparent improper action of defendants in adopting the negative declaration.

For all of these reasons I concur in the judgment.