[No. C051419. Third Dist. Oct. 11, 2006.]

CITIZENS FOR OPEN GOVERNMENT, Plaintiff and Appellant, v.
CITY OF LODI et al., Defendants and Respondents;
BROWMAN DEVELOPMENT CO. et al., Real Parties in Interest and
Respondents.

**COUNSEL**

Donald B. Mooney for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Jonathan P. Hobbs and Janice D. Magdich for Defendants and Respondents.

Remy, Thomas, Moose & Manley and James G. Moose for Real Parties in Interest and Respondents.

**OPINION**

**CANTIL-SAKAUYE, J.**—Citizens for Open Government (Citizens), a nonprofit group, filed a petition for writ of mandate against the City of Lodi and Lodi City Council (together the City) challenging its certification of a final environmental impact report (FEIR) and approval of a use permit for the Lodi Shopping Center, which has as its proposed anchor tenant a Wal-Mart

Supercenter. Citizens alleged the City's actions violated the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.)[1] The trial court granted the City's motion to dismiss the petition based on Citizens' failure to exhaust administrative remedies or lack of standing. Citizens appeals the judgment of dismissal claiming its representatives appeared and objected to the City's proposed actions at each of the hearings before the planning commission and each of the hearings before the city council thereby exhausting Citizens' available administrative remedies even though Citizens did not itself file the notice of appeal that brought the decision of the planning commission to the city council. We agree and shall reverse the judgment of dismissal.

## BACKGROUND

In 2002, Browman Development Co., real party in interest (Browman), filed an application with the City for a use permit to develop a shopping center on approximately 36 acres located at the southwest corner of Lower Sacramento Road and Kettleman Lane. The proposed project (project) contemplated construction of approximately 340,000 square feet of commercial retail space with a Wal-Mart Supercenter occupying approximately 227,000 of those square feet.

The City of Lodi issued a notice of preparation of a draft environmental impact report (DEIR) on the project in April 2003 and filed a notice of completion of the DEIR in August 2004. The City invited and received written comment on the DEIR and set a public meeting for September 8, 2004, before the planning commission to receive oral comments on the DEIR. Ann Cerney, a spokesperson for Citizens, attended the public hearing before the planning commission and raised a number of issues regarding the DEIR. Cerney also timely sent a letter asserting five areas of inadequacy of the DEIR. A law firm representing a second group of Lodi residents, later referred to as "Lodi First," also sent in extensive written comments on the DEIR. The issues raised by Citizens and Lodi First were not identical, although there were areas of overlap. Responses to both Cerney's written and oral comments and Lodi First's comments were included in the FEIR completed by the City in November 2004.

On December 8, 2004, the planning commission held a public hearing on the FEIR and the resolution to approve Browman's application for use permit and tentative parcel map. Cerney appeared on behalf of Citizens and objected to the certification of the FEIR on the basis that it failed to comply with the requirements of CEQA. A representative of Lodi First also appeared in

---

[1] Hereafter, undesignated statutory references are to the Public Resources Code.

opposition to the project. The planning commission certified the FEIR and approved the resolution approving Browman's application for a use permit and tentative parcel map.

The chairman of the planning commission reminded the people present at the hearing that there was an applicable appeal process if they disagreed with the decision of the commission. Specifically, persons who participated in the review process by submitting written or oral testimony or by attending the public hearing could appeal. The appeal must be filed within five days with the city clerk. There was an appeal fee of $250. Notice of this appeal right also had been included on the agenda for the hearing.

The notice and comments regarding an appeal from the planning commission's decision were consistent with the project review process required by CEQA (§ 21151, subd. (c); Cal. Code Regs., tit. 14, § 15090, subd. (b) (Guidelines)), as outlined in the DEIR. The DEIR, which was incorporated in the FEIR, included then current Lodi Municipal Code section 17.72.110 (City Code section 17.72.110) regarding the appeal process of any action regarding use permits.[2] The DEIR provided that once the FEIR was certified by the planning commission, the planning commission could consider the project for approval. The DEIR stated: "Since the project will not require a General Plan amendment or Rezoning which would require City Council approval, the project will require approval only by the Planning Commission, *unless the approval is appealed to the City Council. If appealed, the City Council will be the final decision-making body on the EIR certification and the project approval.*" (Italics added.) With respect to use permits, City Code section 17.72.110, as it read in 2004, provided, in pertinent part: "A. Any applicant or person claiming to be directly and adversely affected by any action of the planning commission on matters referred to in this chapter may, within five days after the action, file a written appeal with the city clerk for transmittal to the city council."[3]

Two days after the planning commission's action, Lodi First filed a letter of appeal requesting de novo review by the city council of the planning commission's decisions. The letter stated the appeal generally was "filed on

---

[2] The City amended City Code section 17.72.110 and changed its appeal process in 2005. (See Lodi Municipal Code, § 17.88.010 et seq.; Lodi City Ord. 1757, § 3 (2005).)

[3] City Code section 17.72.110 provided in full: "A. Any applicant or person claiming to be directly and adversely affected by any action of the planning commission on matters referred to in this chapter may, within five days after the action, file a written appeal with the city clerk for transmittal to the city council. The appeal shall stay the issuance of any permits in connection with the action pending the decision of the city council. [¶] B. Upon the receipt of any such appeal, the city council shall, after receiving a report from the planning commission, and after at least one public hearing on the case as provided by law, render a decision sustaining, amending or overruling the action of the planning commission on the case."

the basis that the Project conflicts with the Lodi Zoning Code, is inconsistent with the Lodi General Plan, and does not satisfy the minimum requirements of [CEQA]." Wal-Mart also filed an appeal challenging two of the conditions on the project adopted by the planning commission. Citizens did not file a separate appeal.

The City set a public hearing before the city council for January 19, 2005, to consider the appeals of the planning commission's decisions. Notice was provided to the public of the hearing. Such notice invited all interested persons "to present their views and comments on this matter. Written statements may be filed with the City Clerk at any time prior to the hearing scheduled herein, and oral statements may be made at said hearing." The notice also advised: "If you challenge the subject matter in court, you may be limited to raising only those issues you or someone else raised at the Public Hearing described in this notice or in written correspondence delivered to the City Clerk, . . . at or prior to the Public Hearing."

At the January 19 hearing, a representative of Lodi First presented a range of comments on the FEIR. Before other comments were received, however, the mayor of Lodi recused himself and declared that a new public hearing would have to be set and held.

The City set a new hearing for February 3, 2005. The notice included the same invitation for all interested persons to present their views and the same advice regarding any subsequent challenge in court.

On February 2, 2005, Citizens faxed a six-page letter of written comments to the City regarding alleged inadequacies of the FEIR *and* in support of the Lodi First appeal.

Citizens appeared at the February 3 public hearing of the city council through its attorney. Counsel made comments in support of the appeal filed by Lodi First, but also stated Citizens objected to the project and to the approval of the FEIR. Citizens focused its comments on the issues of mitigation of the loss of prime farmland and an alleged failure of the FEIR to analyze a reasonable range of alternatives to the proposed project because of a project definition too narrowly drawn. Such issues differed from the issues discussed by Lodi First in its comments to the city council.[4]

After the close of the public discussion, the City attorney advised the city council that if the members decided they were in favor of the project, their

---

[4] Counsel for Lodi First raised issues relating to the FEIR's definition of urban decay, treatment of the urban decay studies, and treatment of cumulative impacts. Counsel discussed various socioeconomic impacts of the project.

vote should not just affirm the findings of the planning commission. Rather, the city council should affirmatively make findings certifying the FEIR and approving the project because it had a duty to affirmatively make such decisions as the city council. The city council passed a resolution to certify the FEIR. The city council turned its attention to the appeal of the conditions on the use permit filed by Wal-Mart, eventually continuing the public hearing to February 16, 2005. Citizens appeared and participated at the continued hearing on February 16 at the close of which the city council approved Browman's application for use permit and tentative parcel map.

The City filed a notice of determination of its approval of the Lodi Shopping Center project on February 18, 2005. Lodi First and Citizens then filed separate lawsuits alleging the City's actions violated CEQA.

The City moved to dismiss Citizens' petition for writ of mandate on the basis of a failure to exhaust administrative remedies, i.e., Citizens' failure to file its own appeal from the planning commission to the city council. The trial court granted the City's motion and entered a judgment of dismissal.

## DISCUSSION

### I.

### Citizens' Petition Is Not Moot

As a preliminary issue, the City[5] claims Citizens' petition for writ of mandate is moot and this appeal should, therefore, be dismissed. The City claims a trial court ruling in this case could no longer have any practical impact or provide effectual relief because the trial court has already set aside the project approvals as a result of a partial grant of Lodi First's petition for writ of mandate.[6] (*Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 391 [225 Cal.Rptr. 559].) We disagree.

The trial court granted Lodi First's petition for writ of mandate only on the issues of inadequate analysis of urban decay and deterioration/cumulative impacts and failure to analyze potential energy impacts. The trial court denied the petition on issues of air quality impacts analysis, loss of agricultural land

---

[5] The City and Browman have submitted a single respondent's brief on appeal. For convenience, we will refer to their combined respondents' claims as the City's claims on appeal.

[6] We grant the City's request for judicial notice of the trial court's order granting the petition for writ of mandate and the judgment granting a peremptory writ of mandate in *Lodi First v. City of Lodi* (Super. Ct. San Joaquin County, 2006, No. CV025999). (Evid. Code, § 452, subd. (d).)

and land use conflicts and inconsistency with general plan and zoning. While the trial court has directed the City to vacate approval of the resolutions certifying the FEIR and the application for a use permit and tentative parcel map, its judgment and order require the City to refrain from further approvals until full compliance with CEQA and state law is demonstrated "in accordance with [the trial court's] Order." Thus, the trial court granted Lodi First's petition only in part. There is no evidence before this court that the City and Browman have abandoned the Lodi shopping center project or that the City does not intend to comply with the trial court's judgment in accordance with the order, addressing the two deficiencies identified by the court. The trial court has continued jurisdiction over the City's proceedings in this matter by way of a return to the peremptory writ. (§ 21168.9, subd. (b).)

Citizens' petition for writ of mandate raises issues regarding the FEIR's project description, inclusion of legally adequate alternatives, failure to adopt reasonable mitigation measures for loss of prime farmland, sufficiency of the evidence to support claimed economic benefits and beneficial infrastructure improvement, and the City's alleged use of compliance with land use plans to offset environmental harms. These claims appear to include at least some additional issues to the matters considered in the Lodi First proceeding. If the trial court finds an additional issue or issues meritorious,[7] it can direct the City to address the additional deficiency or deficiencies in the FEIR in the City's proceedings undertaken in response to the court's order arising from Lodi First's petition. Effective relief would be possible in this case. Therefore, this appeal is not moot.

## II.

### Citizens Has Exhausted Its Administrative Remedies

The trial court concluded Citizens had failed to exhaust its administrative remedies because it did not appeal the final decision of the planning commission to the city council pursuant to the requirements of the City's municipal code. The trial court found the mere fact other parties appealed the planning commission's decision did not exhaust Citizens' administrative remedies.

We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case. (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1136 [27 Cal.Rptr.3d 675]; *Anthony v. Snyder* (2004) 116 Cal.App.4th 643, 654 [10 Cal.Rptr.3d 505].) Applying such standard, we conclude the trial court's conclusion was in error.

---

[7] We express no opinion on the merits of these claims.

■ The exhaustion of administrative remedies doctrine "bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all; it also operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to 'exhaust' the remedy available to them in the course of the proceeding itself." (*California Aviation Council v. County of Amador* (1988) 200 Cal.App.3d 337, 341 [246 Cal.Rptr. 110] (*California Aviation*).) As our Supreme Court has stated it: "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942].) The rule is a jurisdictional prerequisite in the sense that it "is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts." (*Id.* at p. 293; see *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1216 [61 Cal.Rptr.2d 447].)

There are several rationales for the exhaustion of administrative remedies doctrine. The primary purpose of the doctrine "is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review." (*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 748 [202 Cal.Rptr. 423].) "The essence of the exhaustion doctrine is the public agency's opportunity to receive and respond to articulated factual issues and legal theories *before* its actions are subjected to judicial review." (*Coalition for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194, 1198 [200 Cal.Rptr. 855]; see *Park Area Neighbors v. Town of Fairfax* (1994) 29 Cal.App.4th 1442, 1447 [35 Cal.Rptr.2d 334].) The doctrine prevents courts from interfering with the subject matter of another tribunal. (*California Aviation, supra,* 200 Cal.App.3d at p. 341.)

■ Another basic purpose of the doctrine " ' "is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief." [Citation.] Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency." [Citation.] It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review. [Citation.]' " (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d

543], quoting *Yamaha Motor Corp. v. Superior Court* (1986) 185 Cal.App.3d 1232, 1240–1241 [230 Cal.Rptr. 382].)

 Section 21177 codifies the doctrine of exhaustion of administrative remedies for CEQA. (Stats. 1984, ch. 1514, § 14.5, p. 5345; *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589–590 [96 Cal.Rptr.2d 880] (*Tahoe Vista*).)[8] Section 21177 provides, in relevant part, as follows: "(a) No action or proceeding may be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." That is, the issues raised before a court must first have been raised during the administrative process, although not necessarily by the person who subsequently seeks judicial review. (*Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1118–1119 [71 Cal.Rptr.2d 1] (*Galante Vineyards*).) Subdivision (b) of section 21177 then provides: "No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." That is, the availability of judicial review is restricted to parties who have objected to the agency's approval of the project. (*Galante Vineyards, supra,* at p. 1119.) In other words, "a petitioner need not have articulated every basis for objecting to the project, but must have participated in the administrative process." (*Ibid.*)

There is no dispute Citizens appeared, participated, and objected to the City's environmental review under CEQA of the Lodi shopping center through its spokesperson or counsel at each and every hearing held by the

---

[8] According to the City, section 21177 is more properly considered a standing statute, rather than an exhaustion of administrative remedies statute. The City cites *California Aviation, supra,* 200 Cal.App.3d 337, 348–349 (conc. opn. of Blease, J.) and *Tahoe Vista, supra,* 81 Cal.App.4th 577, 590, to that effect. However, these opinions specifically discussed the characterization of section 21177 in the context of the petitioner's appearance at a hearing leading to the adoption of a negative declaration as being more appropriately viewed as an issue of standing because of the nature of that hearing. Here in contrast, the question is whether Citizens must itself have appealed the planning commission's decision to certify the FEIR to the city council in order to have exhausted its administrative remedies. We continue to view this as presenting a question of exhaustion of administrative remedies. (See *California Aviation, supra,* at p. 349 (conc. opn. of Blease, J.) ["once a wrongful administrative action has been taken the focus of the affected members of the public is sharpened. If some reasonable administrative remedy, such as the right to appeal the action of a planning commission, were afforded to challenge such improper action the doctrine of administrative remedies would bar suit by litigants who failed to employ it"].)

planning commission and the city council on the project.[9] Citizens claims no more is required. The City contends Citizens was still required to file its own appeal pursuant to City Code section 17.72.110.

■ Consideration of whether exhaustion of administrative remedies has occurred depends upon the procedures applicable to the public agency in question. (*Tahoe Vista, supra,* 81 Cal.App.4th at p. 591; *City of Sacramento v. State Water Resources Control Bd.* (1992) 2 Cal.App.4th 960, 969 [3 Cal.Rptr.2d 643]; *Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852, 860 [226 Cal.Rptr. 575].) We turn to the process applicable here.

First we note CEQA itself provides that "[i]f a nonelected decisionmaking body of a local lead agency certifies an environmental impact report, . . . that certification . . . may be appealed to the agency's elected decisionmaking body[.]" (§ 21151, subd. (c); see Guidelines, § 15090, subd. (b).) In accordance with this requirement, the DEIR for this project, incorporated into the FEIR, provided for an appeal of the planning commission's decision to approve the project to the city council. The DEIR stated: "*If appealed, the City Council will be the final decision-making body on the EIR certification and the project approval.*" (Italics added.) The effect of making the city council the "final decision-making body" was to bring the FEIR before the city council for an independent, de novo review, as provided by Guidelines, section 15090, subdivision (a), which states in full that "[p]rior to approving a project the lead agency shall certify that: [¶] (1) The final EIR has been completed in compliance with CEQA; [¶] (2) The final EIR was presented to the decisionmaking body of the lead agency and that the decisionmaking body reviewed and considered the information contained in the final EIR prior to approving the project; and [¶] (3) *The final EIR reflects the lead agency's independent judgment and analysis.*" (Italics added.) As the city council was the "final decision-making body," it was not acting in the role of a reviewing body in the sense of a traditional appellate proceeding (where the party entitled to relief is normally only the appellant, i.e., the party who filed the notice of appeal, and the issues generally are restricted to those raised by the appellant), despite the fact the mechanism for bringing the project before the city council was designated "an appeal." The public hearing before the city council was a new consideration of the FEIR and the project at which all interested members of the public were entitled to comment and object.

[9] This distinguishes this case from *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664], where the plaintiffs filed a late appeal of a planning commission decision without tendering the required filing fee, the City rejected the appeal and the city council never heard the matter. The issue before the California Supreme Court was not whether the plaintiffs had failed to exhaust their administrative remedies, but whether they were excused from doing so. (*Id.* at p. 417.)

■ The City's code also provided an appeal process for a decision made by the planning commission on an application for a use permit, which this project required. City Code section 17.72.110 provided at the time, in pertinent part: "A. Any applicant or person claiming to be directly and adversely affected by any action of the planning commission on matters referred to in this chapter may, within five days after the action, file a written appeal with the city clerk for transmittal to the city council. . . ." Such language does not require the specification of issues for the appeal. It does not limit the city council's consideration or review of the use permit decision to the issues raised by the person filing the appeal.[10] The language does not require an appeal to be filed by "each" or "every" person claiming to be directly and adversely affected in order for such person to appear before the city council. The language of section 17.72.110 is consistent with the "appeal" being in reality a transfer of the final decisionmaking authority from the planning commission to the city council, that is, a procedural mechanism for triggering the city council's independent and new consideration of the use permit.

Nothing in the notices of the hearings set before the city council in this case suggests a different interpretation by the City of City Code section 17.72.110 or of the FEIR review process. The notices for the hearing invited all interested persons without any limitation "to present their views and comments on this matter." The notices also advised: "If you challenge the subject matter in court, you may be limited to raising only those issues you or someone else raised at the Public Hearing described in this notice or in written correspondence delivered to the City Clerk, . . . at or prior to the Public Hearing." This latter language certainly does not reflect a view by the City that judicial review was limited to the person who filed the notice of appeal. The notices did not require an appeal to the city council be filed in order for a person or party to challenge the matter in court. The notice implies that any person participating in the hearing could subsequently challenge the matter in court limited only by the issues raised at the hearing.

Moreover, the ultimate action of the city council reflects its role as an independent final decisionmaking body. In accordance with the advice of the City attorney, the city council did not, at the close of the hearings on February 3 and 16, 2005, just affirm the findings of the planning commission; rather, it affirmatively adopted the resolutions making the necessary findings to certify the FEIR and approve the use permit and tentative parcel map for the project.[11]

---

[10] This critically distinguishes City Code section 17.72.110 from the Placer County Code provisions at issue in *Tahoe Vista, supra,* 81 Cal.App.4th at page 592.

[11] We consider the city council's ultimate formal action as being a more reliable indication of the Council's understanding of its role at the hearing than the acting mayor's preliminary

■ For these reasons, we conclude City Code section 17.72.110 did not require each and every person adversely affected by a decision of the planning commission on an application for a use permit to file an appeal to preserve their right to participate and object before the city council and ultimately pursue a remedy in the courts. Instead, City Code section 17.72.110, like the corresponding CEQA provisions, used the method of an "appeal" to bring a use permit application from the planning commission to the city council for its independent consideration as the final decision maker. At such hearing, a person's participation and objection regarding the City's approval of a use permit satisfied the exhaustion of administrative remedies requirement, assuming the issues subsequently sought to be litigated were sufficiently raised before the city council.

■ Thus, Citizens' actions in this case met both the requirements of section 21177 and City Code section 17.72.110. Its actions satisfied the purposes of the exhaustion of administrative remedies doctrine. The city council had as full an "opportunity to receive and respond to articulated factual issues and legal theories" before making its decision (*Coalition for Student Action v. City of Fullerton, supra,* 153 Cal.App.3d at p. 1198; see *Park Area Neighbors v. Town of Fairfax, supra,* 29 Cal.App.4th at p. 1447; see *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino, supra,* 155 Cal.App.3d at p. 748) as it did before it had to respond to Lodi First's petition for writ of mandate, which could have raised any of the issues Citizens presented at the city council hearing and in which Citizens could have joined as a copetitioner. An administrative record has been created for judicial review, the claims have been sifted by the city council, and the city council has applied its expertise with the help of its staff and made its final decision on the issues and theories raised. (*Sierra Club v. San Joaquin Local Agency Formation Com., supra,* 21 Cal.4th at p. 501.) There is no reason to additionally require Citizens to have filed its own notice of appeal in order to file its own petition. (See *Friends of Mammoth v. Bd. of Supervisors* (1972) 8 Cal.3d 247, 268 [104 Cal.Rptr. 761, 502 P.2d 1049], disapproved on other grounds by *Kowis v. Howard* (1992) 3 Cal.4th 888, 896–898 [12 Cal.Rptr.2d 728, 838 P.2d 250] [requiring named plaintiffs to have personally appeared before board of supervisors or unnamed plaintiffs to be named plaintiffs would serve no additional useful purpose]; *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino, supra,* at p. 748 [objections to final arbiter fully served purpose of exhaustion doctrine]; *Browning-Ferris Industries v. City Council, supra,* 181 Cal.App.3d at p. 860 [same].)

comments at the commencement of the hearing that the proceeding was a "quasi-judicial proceeding where the council actually sits in sort of as judges up here as to whether the Planning Commission process of approval was based upon adequate environmental impact information."

## DISPOSITION

The judgment of dismissal is reversed and the matter remanded to the trial court with directions to enter a new order denying the City's motion to dismiss. Costs on appeal are awarded to appellant. (Cal. Rules of Court, rule 27(a).)

Hull, Acting P. J., and Robie, J., concurred.