[No. A031275. First Dist., Div. Two. May 20, 1987.]

ART CERINI, Plaintiff and Appellant, v.
CITY OF CLOVERDALE et al., Defendants and Respondents.

1472

COUNSEL

Thomas R. Kenney and Kenney & Barbose for Plaintiff and Appellant.

John A. Klein and Margaret K. Butler for Defendants and Respondents.

OPINION

BENSON, J.—Art Cerini appeals from a judgment denying his petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) Cerini sought the writ to direct the City of Cloverdale to comply with the decision of an appeals board reinstating Cerini as a patrolman on the Cloverdale police force. We reverse.

The facts on appeal are not in dispute. In August 1971, the City Council of the general law City of Cloverdale (pop. 4,000) enacted ordinance No. 301 N.S. (hereafter 301 N.S.). While 301 N.S. reserved the right for the city council to establish by resolution a method and procedure for rules and regulations for the appointment and discharge of city employees, it provided that an employee subject to termination or discipline shall have the right to an appeal before the appeals board (Board). The Board consisted of a three-

member panel; one member to be chosen by the aggrieved employee, another by the city council, and the third by the Personnel Director of Sonoma County. The Board's function was to hear all appeals of the decision of any department head or the city council regarding termination of employment or violation of personnel rules. The hearing would be conducted in accordance with the laws of California, and a decision by a majority of the panel would be *binding* on the city and the employee.

In November 1976, the city council adopted a memorandum of understanding between Cloverdale and city employees which incorporated the provisions of 301 N.S.

Cerini joined the Cloverdale police force as a part-time reserve officer in 1975, was hired as a patrolman in 1977, then promoted to sergeant in 1979. The position of sergeant required Cerini to perform, inter alia, supervisorial and personnel duties.

In June 1981, after placing Cerini on administrative leave, Cloverdale police chief Rod Persons formally charged Cerini with 47 violations of departmental rules, and asked Cerini to resign or be terminated. After a confidential meeting with Persons, the city council voted to terminate Cerini's employment. Cerini requested an appeal pursuant to 301 N.S. The parties selected the Board and set the hearing for December 2-4, 1981.

One week prior to the appeals hearing the city council passed resolution 69-81 which set forth rules and regulations for the conduct of the hearing. Resolution 69-81 provided that the Board's sole function was to make findings of fact, but that it may recommend action to be taken on the basis of its findings. The original draft of 69-81 provided that the Board would make *no* recommendations to the city council, but the word "no" was scratched out after Cerini argued that failure to allow a recommendation would make the appeal a futile exercise.

At the outset of the hearing twenty of the charges against Cerini were dropped, and after three days of taking evidence the Board sustained seven of the remaining charges. The sustained charges were as follows: criticism of officers and orders, disrespect for superior officers, creating disharmony between officers, placing blame for a supervisory decision on another supervisor, and failure to take supervisory action. The Board found that the evidence did not impugn his capability as a police officer, and recommended that he be restored to the position of patrolman, and receive backpay from the date of dismissal.

In January 1982, the city council refused to abide by the Board's decision, and voted to uphold Cerini's termination.

On appeal, Cerini argues that 301 N.S. empowered the Board with the authority to render a binding decision regarding the fate of his employment. He further contends that resolution 69-81 had no revocating effect on this authority. Alternatively, Cerini argues that the trial court erred in holding that the city council was not required to review the record of the appeals hearing prior to upholding his termination. Finally, Cerini requests attorney's fees pursuant to Government Code[1] section 800.

## I

██ The application and interpretation of statutes and ordinances presents pure questions of law subject to our independent review. (*Killian v. City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430]; *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].) Furthermore, the interpretation of a personnel policy governing an administrative appeal also falls within the scope of our independent judgment. (*Civil Service Assn. v. Redevelopment Agency* (1985) 166 Cal.App.3d 1222, 1225 [213 Cal.Rptr. 1].)

## II

*Did 301 N.S. Vest the Board With the Power to Determine the Ultimate Fate of Discharged Employees?*

Cloverdale is a general law city. ██ The city council of a general law city possesses only those powers expressly conferred on it by statute, together with powers which are necessarily incident to those expressly granted. (*Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13, 20 [51 Cal.Rptr. 881, 415 P.2d 769].)

The Government Code contains several sections dealing with city personnel matters. Sections 45000, 45001 and 45004[2] are pertinent to the inquiry before us. Section 45001 provides in part that the city council may establish a personnel or civil service system for the suspension and discharge

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] Section 45000 states in pertinent part: "It is the intent of this chapter to enable the legislative body of any city to adopt such a personnel system, merit system, or civil service system as is adaptable to the size and type of the city. . . ."

Section 45001 states: "By ordinance, the legislative body of any city may establish a personnel system, merit system, or civil service system for the selection, employment, classification, advancement, suspension, discharge, and retirement of appointed officers and employees."

Section 45004 states: "The legislative body may provide for the appointment of a civil service commission or personnel officer, to which it may delegate such powers and duties in relation to the system as it deems advisable."

of city employees. Section 45004 enables the city council to "provide for the appointment of a civil service commission or personnel officer, to which it may delegate such powers and duties in relation to the system as it seems advisable."

However, where a statute mandates that the city council is to exercise a specified discretionary power, the power is held in the nature of a public trust and may not be delegated to others in absence of further statutory authorization. (*Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 24 [132 Cal.Rptr. 668, 553 P.2d 1140].)

## A

From the foregoing authorities, it is clear that the city council, in enacting 301 N.S., properly delegated its authority to the Board if (1) there exists no statutory mandate that places the discretion to discharge city employees solely with the city council, and (2) the Board were properly characterized as a civil service commission within the meaning of the Government Code.

Respondent relies on section 36506 which provides as follows: "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees. Such officers and employees hold office during the pleasure of the city council." In *Bagley* v. *City of Manhattan Beach, supra,* 18 Cal.3d at page 24, the Supreme Court interpreted the first sentence of this section to require that the discretion to set city employees' wages is placed solely with the city council. Thus, the court held that the city council of a general law city properly refused to place on the ballot an initiative which provided that fireman's wage disputes be sent to binding arbitration.

We have found no case construing the second sentence of section 36506. We believe that the language of the second sentence should not be given the same forceful reading as the first sentence of that section. The second sentence contains no language requiring that the discretion to retain or discharge city employees be vested solely with the city council.

Cerini's reliance on *Taylor* v. *Crane* (1979) 24 Cal.3d 442 [155 Cal.Rptr. 695, 595 P.2d 129] is misplaced. That case has no application here as it involved the question of whether a *charter* city could delegate the power to discharge employees. The court applied the principle that a city charter is construed to permit the exercise of power not expressly limited by the charter. (*Id.* at p. 451.) Here, Cloverdale is a general law city, and thus must follow the provisions of the Government Code. We find that section 36506 grants to the Cloverdale city council the power to terminate appointed offi-

cers or employees of the city. We also find that sections 45001 and 45004 permit the city council to delegate that power to a civil service commission or a personnel officer.

The Government Code, although permitting the creation of a civil service commission, nowhere sets guidelines for the creation, appointment, or operation of the commission. However, section 45000 sheds some light as it provides that a city may adopt a civil service system as is adaptable to the size and type of city.

Whether the Board created by 301 N.S. is an independent public office or a subordinate ministerial appendage of the city council does not depend so much on how the position is designated, but upon the powers granted and duties performed. (*People* v. *Hulburt* (1977) 75 Cal.App.3d 404, 411 [142 Cal.Rptr. 190].) ██ Courts have looked to two essential characteristics of an independent public office to distinguish it from a position subordinate to the city council: first, the office must not be transient, occasional or incidental, but is in itself an entity in which incumbents succeed one another; second, the position must have the authority to exercise some portion of the sovereign fuction of government, whether legislative, executive or judicial. (*Moore* v. *Parrish* (1982) 32 Cal.3d 535, 545 [186 Cal.Rptr. 475, 652 P.2d 32]; *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 210 [145 Cal.Rptr. 461].)

Although an independent office must have some permanence and continuity, these terms do not refer to the tenure of the appointed officer, but apply to the permanency and continuity of the office itself. (*City Counsel* v. *McKinley, supra,* 80 Cal.App.3d at pp. 210-211.) Furthermore, it is immaterial whether the duty of the officer is to perform one act or a series thereof. (*Patton* v. *Board of Health, etc.* (1899) 127 Cal. 388, 395 [59 P.702].)

██ We conclude that 301 N.S. created a permanent and continuous Board. The language "[t]here is hereby created an Appeals Board," indicates that the Board was in existence prior to the appointment of any officers. And, although the duty of the officers is to preside over a single dispute, the Board does not dissolve when the dispute ends. Cloverdale is a small community which does not need a Board with permanent officers; instead, it has adopted a Board which is adaptable to the size and type of the city.

Furthermore, the terms of 301 N.S. empowered the Board with authority to exercise judicial discretion, a sovereign function. The Board's duty was to hear disputes, apply the laws of California, and render a binding decision.

Cloverdale argues, however, that the term "decision" in 301 N.S. is vague, that it refers only to the Board's factfinding decisions, and not to those concerning whether the employee should be discharged or retained. We disagree. Section 12F of 301 N.S. provides in part: "A decision by a majority of the Appeals Board shall be binding on the employee and the City." ▮ Unless clearly intended otherwise, words in an ordinance must be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].) Cloverdale's interpretation of the term "decision" conflicts with the notion of an appeal. It would be an idle act for an employee subject to termination to take an appeal—to remove a cause to a superior tribunal to correct errors committed by an inferior tribunal—if the city council were able to ignore the ruling of the Board. One of the chief purposes of civil service regulations is to provide for a method of dismissal to protect employees from arbitrary ouster. (*Hanley* v. *Murphy* (1953) 40 Cal.2d 572, 581 [255 P.2d 1].) ▮ We determine that 301 N.S. was intended to create an appellate tribunal to provide employees with an opportunity to have decisions by the city council or department heads subject to an independent and binding review. Thus, we hold that the Board was a civil service commission.

B

▮ The decisions of a civil service commission have the force and effect of law provided that they are within the authority conferred by the legislative body. (*Chavez* v. *Civil Service Com.* (1978) 86 Cal.App.3d 324, 328 [150 Cal.Rptr. 197].) ▮ Cloverdale contends that even if the Board were a civil service commission, it would be without power to decide the fate of Cerini's employment, because 301 N.S. failed to provide adequate standards to direct the manner in which discipline should be imposed.

The requirement for standards stems from a need to protect against arbitrary treatment; however, it is merely one method by which to achieve the effective implementation of the legislative policy, and has no sacrosanct quality in itself. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 381 [71 Cal.Rptr. 687, 445 P.2d 303].) "The need is usually not for standards but for safeguards. . . ." (*Ibid.*, quoting from 1 Davis, Administrative Law Treatise (1958) § 2.15; *Hewitt* v. *Rincon del Diablo Municipal Water Dist.* (1980) 107 Cal.App.3d 78, 86 [165 Cal.Rptr. 545].) ▮ Thus, reasonable grants of power to an administrative agency are valid when accompanied by suitable safeguards to guide the use of power and protect against misuse. (*People* v. *Wright* (1982) 30 Cal.3d 705, 712 [180 Cal.Rptr. 196, 639 P.2d 267].) Moreover, the fact that an ordinance vests an agency with unlimited discretion, or power to exercise a judgment of high order does not confer unrestricted

power. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 73 [101 Cal.Rptr. 768, 496 P.2d 840]; *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 327 [118 Cal.Rptr. 315].)

■ Given the purpose of the Board's existence and the nature of its duties, we find ample standards and safeguards for effective implementation of the legislative policy. 301 N.S. sets forth the method of selecting the appointive officers—similar to arbitration—to serve on the Board. It clearly states the duties of the Board, and mandates that the hearing be conducted in accordance with the laws of California. Moreover, 301 N.S. provides the city council with the right to establish rules and regulations concerning the discharge of employees, and to appoint one of the officers to serve on the Board. The city council controlled the creation of the personnel regulations, and drafted the specific charges against the employee, hence defining the scope of the hearing. Finally, Cloverdale had the right to judicial review should the Board abuse its discretion.

Thus, finding adequate standards and safeguards to prevent arbitrary treatment by the Board, we hold that the Board had the binding authority to determine whether an aggrieved employee should be retained or discharged.

### III

*Did 69-81 Invalidate the Board's Authority?*

■ Cerini argues that resolution 69-81 was void because it violated the "meet and confer requirement" of the Meyers-Milias-Brown Act (MMB Act) (§ 3500 et seq.). In the alternative he argues that 69-81 was in effect an ordinance which, by law, did not become operative until after the appeals hearing.

Section 3507 provides that a public agency may adopt rules and regulations pertaining to, inter alia, the resolution of disputes involving terms and conditions of employment after consultation in good faith with employee representatives. Section 3505.1 provides that the parties may draft the terms of the agreement in a memorandum of understanding. Once a memorandum of understanding is approved by the city council its terms are binding on the city and its employees. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337 [124 Cal.Rptr. 513, 540 P.2d 609].)

Because the City Council of Cloverdale approved the memorandum of understanding which incorporated 301 N.S., it could not revoke the provi-

sion of 301 N.S. granting the right of appeal to employees without first c onferring with employee representatives. Resolution 69-81, by reducing the Board's authority to mere factfinding, effectively took away Cerini's right to have the city council's decision to terminate his employment subject to an independent review. There was no meeting or conferring with Cerini's representatives concerning the change. As such, 69-81 was invalid to the extent that it attempted to revoke Cerini's right to a binding appeal.

Having found the decision by the Board binding on the city council, we need not address Cerini's contention that the city council was required to review the findings of the Board before voting to uphold his termination.

IV

Finally, Cerini requests attorney's fees pursuant to section 800. That section provides for the recovery of reasonable attorney's fees, not to exceed $1,500, to the prevailing petitioner obligated to pay such fees, in a civil suit challenging the determination of an administrative agency, where the agency acted in an arbitrary and capricious manner. Recovery is proper where the administrative agency makes an unsubstantiated determination or engages in conduct not supported by substantial reason (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 421 [216 Cal.Rptr. 782, 703 P.2d 122]), engages in a bad faith legal dispute (*Plumbing Etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 221 [134 Cal.Rptr. 332]) or follows a course of action contrary to law (*Midstate Theatres, Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204, 212 [119 Cal.Rptr. 894]).

In *Reeves* v. *City of Burbank* (1979) 94 Cal.App.3d 770 [156 Cal.Rptr. 667], the court found that the city's reliance on an ordinance prohibiting the plaintiff from obtaining a building relocation permit constituted arbitrary and capricious conduct, where the city, two years prior to the enactment of the ordinance, had discouraged the plaintiff from applying for the permit, then denied her application during the period after the passage of the ordinance but before it became effective. The court held that the city's action was due to an "unjustifiable reaction to [the petitioner's] proposal—unsubstantiated by reference to any specific facts. . . ." (*Id.* at p. 779.)

Similarly, the Cloverdale city council's conduct leading up to and including its decision to uphold Cerini's discharge was an "unjustifiable reaction" to his attempt to pursue his right of appeal. The city council's "eleventh hour" resolution to reduce the Board's appellate authority, a violation of the meet and confer requirements of the MMB Act, and its decision to uphold Cerini's termination in the face of the Board's ruling that the sustained charges did not impugn his ability as a patrolman, and that he be

reinstated, constituted arbitrary and capricious conduct within the meaning of section 800.

V

The judgment is reversed and the cause remanded to the trial court with directions to issue the writ directing Cloverdale to comply with the decision of the Board reinstating Cerini as a patrolman with backpay. The court shall also award Cerini attorney's fees not to exceed $1,500.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied June 19, 1987, and respondents' petition for review by the Supreme Court was denied July 29, 1987.