[No. F024311. Fifth Dist. Apr. 9, 1996.]

LAIDLAW ENVIRONMENTAL SERVICES, INC., LOCAL ASSESSMENT COMMITTEE et al., Plaintiffs and Appellants, v. COUNTY OF KERN et al., Defendants and Respondents; LAIDLAW ENVIRONMENTAL SERVICES, INC., Real Party in Interest and Respondent.

**COUNSEL**

Richard Roos-Collins and Mark R. Wolfe for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Lawrence K. Keethe, Deputy Attorney General, B. C. Barmann, County Counsel and Stephen D. Schuett, Assistant County Counsel, for Defendants and Respondents.

Gray, Cary, Ware & Freidenrich, J. Martin Robertson, Larry J. Bradfish, Michael M. Hogan, Richard A. Paul, Hogan Guiney and Michael M. Hogan for Real Party in Interest and Respondent.

**OPINION**

**BUCKLEY, J.—**

FACTS

In October 1991, Laidlaw Environmental Services, Inc. (LES LOKERN), noticed its intention to seek a conditional use permit and general plan amendment from Kern County to expand and modify its existing hazardous waste facility near the unincorporated town of Buttonwillow. LES LOKERN proposed to add a landfill and a container storage facility.

After accepting LES LOKERN's application, Kern County Board of Supervisors appointed a local assessment committee (LAC) as directed by Health and Safety Code section 25199.7, subdivision (d).[1] Among those persons appointed to LAC to advise on the LES LOKERN request were Eduardo Montoya, Dennis Palla, and Michael Saltz, appellants herein.

In February 1992, LAC held its first meeting; five more meetings were conducted through June of that year. During those initial meetings, LAC familiarized itself with LES LOKERN's permanent application, established internal procedures, and began negotiations with LES LOKERN on various issues.

In July 1992, shortly before the next scheduled LAC meeting, LAC was instructed by Kern County, with the approval of LES LOKERN, to cease all further activities pending Kern County's preparation of a draft supplemental environmental impact report (SEIR) under the California Environmental Quality Act (CEQA). Kern County explained that it would respond to the local community's need for information not through LAC but instead by placing emphasis on preparation of that document.[2] Kern County represented that it would provide notice to LAC of the availability of the SEIR for public review and would schedule any further meetings or activity for LAC. Prior to giving these instructions, Kern County did not consult with or obtain the consent of LAC.

On or about January 27, 1994, Kern County released the draft SEIR for the project. Contrary to its prior assurances, Kern County did not provide

---

[1]Health and Safety Code section 25199.7, subdivision (d) provides, in pertinent part:

"(d) The legislative body of the affected local agency shall appoint a seven member local assessment committee to advise it in considering an application for a land use decision for a specified hazardous waste facility project. The members of the local assessment committee may be appointed at any time after the notice of intent is filed with the local agency but shall be appointed not later than 30 days after the application for the land use decision is accepted as complete by the local agency. The local agency shall charge the project proponent a fee to cover the local agency's costs of establishing and convening the local assessment committee. The fee shall accompany the application for a land use decision.

"(1) The membership of the committee shall be broadly constituted to reflect the makeup of the community, and shall include three representatives of the community at large, two representatives of environmental or public interest groups, and two representatives of affected businesses and industries. Members of local assessment committees selected pursuant to this subdivision shall have no direct financial interest, as defined in Section 87103 of the Government Code, in the proposed specified hazardous waste facility project."

[2]Through the Tanner Act (Health & Saf. Code, § 25135 et seq.), the Legislature intended to coordinate and expedite the approval of hazardous waste facilities, to ensure the compliance with all applicable regulations and to give the public a voice in decisions relative thereto. Section 25199.7, subdivision (d) is an integral part of the Tanner Act.

copies of the draft document to LAC or any of its individual members prior to the close of the public comment period for the draft SEIR. Kern County released the final SEIR in early September 1994, and Kern County reconvened LAC on September 27, 1994, two years and two months after Kern County suspended all activities of LAC.

Upon reconvening LAC, Kern County instructed it to complete its activities within one month. At that juncture, LAC's unfulfilled statutory duties included review of the project application and the SEIR, negotiations with LES LOKERN over health and safety measures, economic benefits and remuneration, and submittal of recommended terms of permits to the Kern County Board of Supervisors. Because LAC was not reconvened until one month prior to the deadline and because of the magnitude of the remaining statutory duties, LAC requested additional time up through June; the request was denied.

LAC also requested that Kern County provide a technical assistance grant to be funded by LES LOKERN to translate the final SEIR into Spanish for the benefit of one of its members, and for the benefit of other Spanish-speaking residents in the community. LAC requested a second technical assistance grant to evaluate the effectiveness of a proposed mitigation measure for the project. Both requests were denied.

LAC requested the assistance of California Trade and Commerce Agency Office of Permit Assistance (OPA) in resolving LAC's difficulties with Kern County regarding the schedule and the denied technical assistance grants. OPA responded by stating it "is willing to coordinate a meeting between all of the concerned parties in the spirit of resolving any existing conflicts, but will not interfere with the legal process that Kern County is pursuing at this time."

On December 12, 1994, LAC submitted a report to the Kern County Board of Supervisors, stating that LAC and LES LOKERN had not yet reached agreement on terms and conditions under which the project would be acceptable to local communities. LAC recommended that Kern County defer final action on the permanent application until June 13, 1995, or that absent such deferral, the permit be denied. On that day the Kern County Board of Supervisors adopted resolution No. 94-684 certifying the SEIR under CEQA and approving the conditional use permit for the hazardous waste project. LAC was discharged as its "services [were] no longer needed."

Following the board's actions, LAC and Montoya, Palla and Saltz, as members of LAC filed a "PETITION FOR WRIT OF MANDATE . . . AND

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF" in the Kern County Superior Court, seeking to vacate the conditional use permit issued to LES LOKERN. OPA was joined as a party defendant on the basis that it violated the Tanner Act by acquiescing in Kern County's actions, thereby preventing LAC from representing affected communities.

Kern County demurred to the petition for writ of mandate on two grounds: LAC and its members lacked the capacity and the standing to sue. LES LOKERN and OPA joined in Kern County's demurrer. The superior court sustained the demurrer without leave to amend on the ground that "[petitioners] lack standing to sue."

## DISCUSSION

### 1. *Standard of Review*

On appeal from a judgment sustaining a demurrer without leave to amend, the reviewing court gives the mandate petition a reasonable interpretation and treats the demurrer as admitting all material facts properly pleaded. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The trial court abuses its discretion and reversal is warranted if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Ibid.*)

### 2. *Standing*

LAC contends the trial court erred in finding LAC did not have standing to assert its claim that Kern County's action violated the Tanner Act. LAC claims it is a beneficially interested party, as it is carrying out its statutory duties under the Tanner Act.

Respondents assert LAC is a "subordinate ministerial appendage" of Kern County, is an advisory committee, does not have an interest independent from the public at large, and therefore does not have standing to sue.

Code of Civil Procedure section 1086 sets forth the controlling statutory requirement for standing for mandate. It provides that a "writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party *beneficially interested*." (Italics added.)

"The requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the

person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].)

■ Although we can find no published case which has addressed standing in the context of an advisory agency, several cases have discussed the question of whether a particular committee is an independent office or a subordinate ministerial appendage of the county. Logic dictates that if an entity is merely a "subordinate ministerial appendage," it does not have sufficient independence to constitute a beneficially interested party.

In *Cerini* v. *City of Cloverdale* (1987) 191 Cal.App.3d 1471 [237 Cal.Rptr. 116], Cerini sought a writ to direct the City of Cloverdale to comply with a decision of an appeals board reinstating Cerini as a patrolman on the Cloverdale police force. The First District Court of Appeal found that, "Whether the [appeals] Board created by [the city council] is an independent public office or a subordinate ministerial appendage of the city council does not depend so much on how the position is designated, but upon the powers granted and duties performed. [Citation.] Courts have looked to two essential characteristics of an independent public office to distinguish it from a position subordinate to the city council: first, the office must not be transient, occasional or incidental, but is in itself an entity in which incumbents succeed one another; second, the position must have the authority to exercise some portion of the sovereign fu[n]ction of government, whether legislative, executive or judicial. [Citations.]

"Although an independent office must have some permanence and continuity, these terms do not refer to the tenure of the appointed officer, but apply to the permanency and continuity of the office itself. [Citation.]" (191 Cal.App.3d at p. 1478.)

Despite LAC's contentions to the contrary, LAC does not have the permanence and continuity present in *Cerini*. LAC is appointed when a specific application is being considered and ceases to exist after final administration by the state or local agency. Its membership, which reflects the makeup of the community, changes as each local assessment committee is created.

Nor is LAC authorized to exercise sovereign power of government. Health and Safety Code section 25199.7, subdivision (d) directs LAC to function as

an advisory committee to the appointing legislative body of the affected local agency. Its duties include advising the affected local agency of the terms and conditions under which the proposed hazardous waste facility project may be acceptable to the community. The statute does not authorize LAC to engage in any legislative, judicial or otherwise decisionmaking powers. We do not equate advising with decisionmaking.

*City Council* v. *McKinley* (1978) 80 Cal.App.3d 204 [145 Cal.Rptr. 461], relied upon by LAC, is inapposite. *McKinley* involved the question of whether a member of a park recreation board, whose firm had been awarded a design contract, was a city officer within the meaning of the city charter. The charter prohibited officers from becoming directly or indirectly interested in any contract with the city.

Although it was determined that a park board member was a public officer under the stated requirements of permanence and sovereignty, the circumstances presented there were much different than those extant here. The park board members were "elected" for two-year terms and served until their successors were "appointed." (*City Council* v. *McKinley, supra,* 80 Cal.App.3d at p. 210.) Accordingly, it was concluded the office was neither transient nor occasional. (At pp. 210-211.) The court also concluded: "The Board's conduct of extensive investigations and preparation of detailed proposals in aid of the city council's contract letting function are so closely related to that body's operation as to be viewed as involving the exercise of the council's own authority to some extent. This factor combines with the Board's advisory relationship to the city manager (who executes any contract after it is approved by the city council) to compel the conclusion the Board exercises administrative or legislative authority in the letting of the contract as contemplated by section 94 of the charter." (80 Cal.App.3d at pp. 212-213.)

We do not construe LAC's role in the present case as an exercise of "administrative or legislative authority." LAC's lack of independence from Kern County is fatal to its contention that it is a beneficially interested party. LAC, whose role is to act as a conduit between the interested parties, Kern County, the applicant and the community, and to advise the county, is not beneficially interested in the process or the result.[3]

---

[3]LAC correctly notes that Government Code section 945 authorizes suits by a public entity. However, we disagree with the attempted syllogistic conclusion that LAC has the right to sue. Simply stated, LAC is not a public entity because, as we have explained, it is not independent.

Alternatively, LAC contends it has standing pursuant to the public interest exception to the requirement that a party be beneficially interested. An exception to the general requirement that only persons who are "beneficially interested" may seek mandamus exists " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, . . ." ' " (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256].) Under such circumstances " ' "the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Ibid.*) These liberal standing requirements have been applied to individuals acting in the public interest to protect against effects of environmental abuse. (*Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 904 [224 Cal.Rptr. 922].)

However, in the present case, we are not deciding whether *citizens* have standing under the "public interest exception." We must determine whether LAC and individuals appearing as members of LAC fall within the exception. We conclude they do not.

Although significantly distinct from the present case because the lawsuit was brought by a board member against the very board on which she sat, certain observations from *Carsten* v. *Psychology Examining Com., supra,* 27 Cal.3d 793 are germane here. The Supreme Court, holding that under the circumstances no public interest exception existed, noted, "Her interest in the subject matter was piqued by service on the board, not by virtue of the neutrality of citizenship." (*Id.* at p. 799.)

Likewise, we find no identifiable purpose or rational policy to allow advisory committee members, *as committee members, to sue the agency which appointed them for alleged failure to follow* the administrative mandates of the Tanner Act.[4] (Cf. *Municipal Court* v. *Superior Court* (1988) 202 Cal.App.3d 957, 963 [249 Cal.Rptr. 182].)

---

(Cf. Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) § 811.2, p. 158; *Garcia* v. *County of Los Angeles* (C.D.Cal. 1984) 588 F.Supp. 700, 707.)

[4]When it is clear the persons aggrieved by defendant's actions are without means or economic interest to seek redress, courts have allowed standing under the public interest exception. (See *Driving Sch. Assn. of Cal.* v. *San Mateo Union High Sch. Dist.* (1992) 11 Cal.App.4th 1513, 1519 [14 Cal.Rptr.2d 908] and *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98, 100 [162 P.2d 627].) In its opinion, the *Bd. of Soc. Welfare* court found the board to be beneficially interested because of the relative incapacity of the needy recipients. Similar circumstances are not presented here.

## DISPOSITION

The judgment is affirmed.[5] Costs are awarded respondents.

Martin, Acting P. J., and Dibiaso, J., concurred.

---

[5]We need not decide whether the petition could be amended to allege Montoya, Palla and Saltz as individuals. Counsel for plaintiffs, at oral argument, expressly declined to make that request.