94 Cal.Rptr.2d 740 (2000)
79 Cal.App.4th 1223
WASTE MANAGEMENT OF ALAMEDA COUNTY, INC., Plaintiff and Respondent,
v.
COUNTY OF ALAMEDA et al., Defendants and Appellants; Browning-Ferris Industries of California, Inc., Real Party in Interest and Appellant.
No. C024917.
Court of Appeal, Third District.
April 17, 2000.
*743 Daniel E. Lungren, Attorney General, Charles W. Getz IV, Assistant Attorney General, and Matthew R. Campbell, Deputy Attorney General for Defendant and Appellant California Integrated Waste Management Board.
Richard Winnie, County Counsel and Lorenzo E. Chambliss, Deputy County *744 Counsel, for Defendant and Appellant County of Alameda.
Bruen & Gordon, Scott W. Gordon and David J. Miller, Walnut Creek, for Real Party in Interest and Appellant.
Landels, Ripley & Diamond, Michael H. Zischke, Sanford Svetcov and James H. Colopy, San Francisco, for Plaintiff and Respondent.
Law Office of J. William Yeates, J. William Yeates, Sacramento, and Heather Tattershall, for Planning and Conservation League as Amicus Curiae on behalf of Plaintiff and Respondent.
SCOTLAND, P.J.
At the request of plaintiff Waste Management of Alameda County, Inc. (Waste Management), the trial court entered a judgment styled a peremptory writ of mandate. The judgment contained the following directives: (1) defendants California Integrated Waste Management Board (the Waste Board) and County of Alameda (the County) were ordered to set aside their approvals of a solid waste facility permit issued to real party in interest Browning-Ferris Industries of California, Inc. (Browning-Ferris), to the extent the approvals authorized the receipt or disposal of "designated waste" within the meaning of regulations of the State Water Resources Control Board (the State Water Board); (2) the Waste Board and the County were ordered to refrain from approving a solid waste facility permit for the disposal of designated waste at Browning-Ferris's landfill until they review the non-water-quality environmental effects of disposal of such waste pursuant to the California Environmental Quality Act (CEQA), and until they comply with the procedures for revising a solid waste facility permit under the California Integrated Waste Management Act of 1989; (3) Browning-Ferris was ordered to suspend the receipt or disposal of designated waste at its landfill pending CEQA review and permit revision; and (4) the County was ordered to take action to abate the receipt or disposal of designated waste at Browning-Ferris's landfill until a conditional use permit authorizing the receipt or disposal of designated waste is issued pursuant to county ordinances.[1]
The Waste Board appeals, as do the County and Browning-Ferris. They raise a number of issues, including the contention that Waste Management lacked standing to pursue the claims which resulted in the trial court's judgment. This court stayed enforcement of the judgment pending resolution of the appeals.
We conclude that Waste Management has failed to establish standing to obtain the relief granted. It is clear from the record that Waste Management's interest in this litigation has been commercial and competitive due to the fact both Waste Management and Browning-Ferris are in the business of solid waste disposal. In essence, Waste Management complains that it was required to go through a permit revision process with CEQA review, while Browning-Ferris was not, thus identifying its injury as the extra cost it incurred and continuing competitive injury due to Browning-Ferris's lower costs. As we shall explain, Waste Management's commercial and competitive interests are not within the zone of interests CEQA was intended to preserve or protect and cannot serve as a beneficial interest for purposes of the standing requirement. We also conclude, among other things, that Waste Management may not maintain this litigation as a citizen's action because it is pursuing its own economic and competitive interests, rather than any demonstrable *745 interest in the environmental concerns which are the essence of CEQA.
Consequently, we shall reverse the judgment and direct the trial court to dismiss the action. Because the issue of standing is dispositive, we do not need to address the other contentions raised on appeal.

FACTUAL AND PROCEDURAL BACKGROUND
Browning-Ferris's landfill is known as the Vasco Road Sanitary Landfill (the Vasco Road facility). It has been in operation since 1962. Originally, it was owned by Ralph Properties and operated by the De-Paoli Equipment Company. Browning-Ferris assumed ownership and operation in 1988, and the facility permit was transferred to Browning-Ferris in 1989. The landfill is classified as a class III landfill for purposes of water quality control regulation.
In 1983, following full CEQA review, the Vasco Road facility was granted a conditional use permit pursuant to county ordinances. The conditional use permit required that operation be in compliance with any terms or conditions imposed by the regional water board. As a class III landfill for water quality control purposes, the Vasco Road facility was precluded from accepting designated wastes without permission from the regional water board. The regional water board's water discharge requirements applicable to the Vasco Road facility precluded, with some exceptions, the acceptance of designated waste.
This dispute arose when Browning-Ferris sought permission from the regional water board to accept designated wastes for disposal in unit 6, phases 1A and 2A, of the Vasco Road facility. The regional water board determined that those areas met the siting criteria and design requirements of a class II facility, that the ambient environmental conditions in those areas would prevent nonhazardous waste from being released in concentrations exceeding applicable water quality objectives, and that it was reasonably expected any releases would not affect beneficial uses of the waters of the state. Hence, the regional water board issued new waste discharge requirements for the Vasco Road facility which authorize acceptance of all nonhazardous solid wastes, thus including designated wastes under the second part of the definition of designated wastes. (Wat.Code, § 13173, subd. (b).) The Vasco Road facility is not permitted to accept hazardous wastes, including hazardous wastes which have been granted a variance from hazardous waste management requirements and which are thus designated wastes. (Wat.Code, § 13173, subd. (a).) That decision of the regional water board has become final and is not subject to judicial review at this time.
Waste Management, a competitor of Browning-Ferris, operates a solid waste disposal facility known as the Altamont landfill, which is located about four miles from the Vasco Road facility. Although located only four miles apart, the facilities are separated by a natural geological divide. The Vasco Road facility is located on a side of the divide that drains west toward the San Francisco Bay, while the Altamont facility is located on a side of the divide that drains east toward the Central Valley. As a result, the Vasco Road facility is under the regulatory auspices of the San Francisco Bay regional water board, while the Altamont facility is under the auspices of the Central Valley regional water board.
In 1993, when Waste Management sought regulatory permission to accept designated wastes at its Altamont facility, the Central Valley regional water board required the facility to undergo a classification upgrade to a class II facility. In addition, the County required CEQA review, including preparation of an EIR, in connection with a revision of Waste Management's solid waste facilities permit and conditional use permit.
*746 Waste Management believes that allowing Browning-Ferris to obtain approval to accept designated wastes without CEQA review would create an unlevel playing field, and it insists Browning-Ferris must undergo CEQA review.[2]
In April 1995, shortly after Browning-Ferris received approval from the regional water board to accept designated waste at the Vasco Road facility, Waste Management wrote to the County to demand that Browning-Ferris be required to obtain an amendment of its conditional use permit after full CEQA review. Waste Management repeated this demand in September 1995. The county zoning administrator replied by advising that an investigation would commence to determine whether the Vasco Road facility was operating contrary to its conditional use permit and/or beyond the scope of the environmental review conducted in connection with the conditional use permit. He also advised that the five-year review of Browning-Ferris's solid waste facilities permit was long overdue and would be commenced and resolved concurrently with the investigation concerning the conditional use permit.
In fact, the five-year review of the Vasco Road facility's solid waste permit had been ongoing since 1994. As the result of the review, the County determined that the Vasco Road facility's solid waste permit should be modified to reflect the regional water board's decision to allow acceptance of all non-hazardous waste, and that neither a permit revision nor CEQA review would be required.[3] The Waste Board concurred in the issuance of a modified permit. Thereafter, the County filed a notice of CEQA exemption, claiming the project was exempt because it involved the operation of an existing facility with minor alterations and no extension of use.
Waste Management commenced this proceeding, with the results we have set forth in the introduction to this opinion.

DISCUSSION
Standing is a jurisdictional issue that may be raised at any time in the proceedings. (Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 438, 261 Cal.Rptr. 574, 777 P.2d 610.) In order to pursue a cause of action, the plaintiffs standing must be established in some appropriate manner. (Parker v. Boivron (1953) 40 Cal.2d 344, 351, 254 P.2d 6; Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co. (1973) 31 Cal. App.3d 220, 224, 107 Cal.Rptr. 123; see California Aviation Council v. County of Amador (1988) 200 Cal.App.3d 337, 349, *747 246 Cal.Rptr. 110 (cone. opn. of Blease, J.).)
Code of Civil Procedure section 1086 provides in pertinent part that a writ of mandate "must be issued upon the verified petition of the party beneficially interested." This provision has been held to establish a standing requirementthe writ will issue only at the request of one who is beneficially interested in the subject matter of the action. (Parker v. Bowron, supra, 40 Cal.2d at p. 351, 254 P.2d 6.)
To establish a beneficial interest, the petitioner must show he or she has some special interest to be served or some particular right to be preserved or protected through issuance of the writ. (Carsten v. Psychology Examining Com. (1980) 27 Cal.3d 793, 796, 166 Cal.Rptr. 844, 614 P.2d 276.) Stated differently, the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied. (Parker v. Bowron, supra, 40 Cal.2d at p. 351, 254 P.2d 6.) This standard is applicable to proceedings in administrative mandate (Bodinson Mfg. Co. v. California E. Com. (1941) 17 Cal.2d 321, 328-330, 109 P.2d 935), and it applies in actions based upon CEQA. (Santiago County Water Dist. v. County of Orange (1981) 118 Cal. App.3d 818, 832, 173 Cal.Rptr. 602; see California Aviation Council v. County of Amador, supra, 200 Cal.App.3d at p. 349, 246 Cal.Rptr. 110 (cone. opn. of Blease, J.).)
Bozung v. Local Agency Formation Com. (1975) 13 Cal.3d 263, at page 272, 118 Cal.Rptr. 249, 529 P.2d 1017, found beneficial interests in the plaintiffs in that case but added: "Moreover, plaintiffs have standing `to procure enforcement of a public duty, ...'" (Citing Kappadahl v. Alcan Pacific Co. (1963) 222 Cal.App.2d 626, 643, 35 Cal.Rptr. 354.) This cryptic comment refers to the matter of a citizen suit. Specifically, where an issue is one of public right, and the object of the action is to procure the enforcement of a public duty, it is sufficient that the plaintiff be interested as a citizen in having the laws executed and the duty in question enforced. (Kappadahl at p. 643, 35 Cal.Rptr. 354; see Common Cause v. Board of Supervisors, supra, 49 Cal.3d at p. 439, 261 Cal.Rptr. 574, 777 P.2d 610; Green v. Obledo (1981) 29 Cal.3d 126, 144, 172 Cal. Rptr. 206, 624 P.2d 256.)
A plaintiffs beneficial interest and the interests of a citizen with respect to public duty are separate bases for establishing standing to pursue an action. Waste Management also asserts standing pursuant to Public Resources Code section 21177, subdivision (b). To these bases we would add the right of a taxpayer to enjoin a waste of public funds or property (Code Civ. Proc, § 526a), as an arguable basis for standing here. We will consider separately each of these potential bases for standing.

A. Beneficial Interest
There are two prongs to the test for the beneficial interest required to pursue an action in mandamus. The first, as noted in Parker v. Bowron, supra, 40 Cal.2d at page 351, 254 P.2d 6, is whether the plaintiff will obtain some benefit from issuance of the writ or suffer some detriment from its denial. The plaintiffs interest must be direct (ibid.; see also Ellis v. Workman (1904) 144 Cal. 113, 115, 77 P. 822), and it must be substantial. (Braude v. City of Los Angeles (1990) 226 Cal. App.3d 83, 87, 276 Cal.Rptr. 256.) Also, it generally must be special in the sense that it is over and above the interest held in common by the public at large. (Tobe v. City of Santa Ana. (1995) 9 Cal.4th 1069, 1085-1086, 40 Cal.Rptr.2d 402, 892 P.2d 1145.)
The second prong of the beneficial interest test is whether the interest the plaintiff seeks to advance is within the zone of interests to be protected or regulated by the legal duty asserted. (See United States v. SCRAP (1973) 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254, 269; *748 Sierra Club v. Morton (1972) 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636, 642; Data Processing Service v. Camp (1970) 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, 188.)
Waste Management asserts that California courts explicitly have rejected federal rules of standing. The case upon which it relies, Environmental Protection Information Center v. Department of Forestry & Fire Protection (1996) 43 Cal. App.4th 1011, 50 Cal.Rptr.2d 892, found the plaintiff association in that case showed it was a genuinely interested party with respect to environmental issues. (Id. at p. 1019, 50 Cal.Rptr.2d 892.) The court further found that, to the extent federal standing rules would deny standing to such an association, the federal law is not applicable in this state. (Id. at p. 1020, 50 Cal.Rptr.2d 892.) However, the court did not explicitly reject federal rules in their entirety. With respect to other aspects of the standing requirement, our law has been said to be consistent with federal law. (See Carsten v. Psychology Examining Com., supra, 27 Cal.3d at p. 797, 166 Cal. Rptr. 844, 614 P.2d 276; Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd. (1987) 190 Cal.App.3d 1515, 1521, fn. 3, 236 Cal.Rptr. 78.) And with respect to CEQA, federal authorities are considered persuasive. (No Oil, Inc. v. City of Los Angeles (1974) 13 Cal.3d 68, 86, fn. 21, 118 Cal.Rptr. 34, 529 P.2d 66; Del Mar Terrace Conservancy, Inc. v. City Council (1992) 10 Cal. App.4th 712, 732, 12 Cal.Rptr.2d 785.)
Although the federal law of standing is persuasive, it is not binding on state courts. Accordingly, we do not refer to the federal "zone of interests" standard as binding authority. Rather, we cite it because it aptly states a qualification that is implicit in our rules of standing, i.e., the plaintiffs interest in the legal duty asserted must be direct rather than indirect or attenuated. (See Parker v. Bowron, supra, 40 Cal.2d at p. 351, 254 P.2d 6; Ellis v. Workman, supra, 144 Cal. at p. 115, 77 P. 822.) An interest, including a financial or commercial interest, which is not within the zone of interests to be protected or regulated by the asserted legal duty, can only be an indirect interest from the standpoint of the law.
It has been clear throughout this litigation that Waste Management's interest is commercial and competitive. It complains that it was required to go through a permit revision process with CEQA review, and it asserts that Browning-Ferris also should be required to do so.[4]
Accordingly, in its respondent's brief, Waste Management asserts a beneficial interest by complaining it was required to undertake the substantial expense of EIR review and mitigation while Browning-Ferris was not, and it identifies its injury as the extra costs it incurred and continuing competitive injury due to Browning-Ferris's lower costs. The assertion fails.
CEQA is not a fair competition statutory scheme. Numerous findings and declarations were made by the Legislature with respect to CEQA. (Pub. Resources Code, §§ 21000-21005.) None of them suggest a purpose of fostering, protecting, *749 or otherwise affecting economic competition among commercial enterprises.
Thus, Waste Management's commercial and competitive interests are not within the zone of interests CEQA was intended to preserve or protect and cannot serve as a beneficial interest for purposes of the standing requirement.
When we review the record without regard to Waste Management's commercial and competitive claims of injury, we find nothing sufficient to show the beneficial interest necessary to establish standing within the zone of interests to which CEQA is directed. All the record discloses is: Browning-Ferris has been authorized to accept designated waste at the Vasco Road facility by the state and regional water boards in proceedings which are beyond judicial review at this time; Waste Management is a commercial enterprise that operates a competing solid waste facility; Waste Management's facility has been authorized to accept designated waste; Waste Management's facility is located about four miles from the Vasco Road facility; and the two facilities lie on opposite sides of a natural geological divide.
According to Waste Management, all that is necessary is for it to establish a geographical nexus to the proposed project. (See Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo (1985) 172 Cal.App.3d 151, 158-159, 217 Cal.Rptr. 893.) In fact, the cited decision merged the requirement of a beneficial interest and the citizen suit exception to that requirement. Nevertheless, as the decision noted, because the effects of environmental abuse are not constrained by artificial political lines, standing to pursue an environmental action is not coterminous with political lines. (Bozung v. Local Agency Formation Com., supra, 13 Cal.3d at p. 272, 118 Cal.Rptr. 249, 529 P.2d 1017; Scott v. City of Indian Wells (1972) 6 Cal.3d 541, 549, 99 Cal.Rptr. 745, 492 P.2d 1137.) However, this is a sword that cuts both ways. Real or threatened environmental effects sufficient to establish a beneficial interest will not necessarily extend to all locations within a particular political subdivision and, thus, it is the potential environmental effect, rather than artificial political lines, which is controlling. (Ibid.; see California Aviation Council v. County of Amador, supra, 200 Cal.App.3d at p. 349, 246 Cal.Rptr. 110 (cone. op. of Blease, J.).)
The fact the Altamont facility is about four miles from the Vasco Road facility is insufficient as to whether the Altamont facility may suffer any non-water-quality environmental effects due to the acceptance of designated waste at the Vasco Road facility. Four miles is a far greater distance than the 1,800 foot proximity involved in Bozung v. Local Agency Formation Com., supra, 13 Cal.3d at page 272, 118 Cal.Rptr. 249, 529 P.2d 1017. Four miles also is far greater than the 5,000 foot proximity which California Aviation Council v. County of Amador, supra, 200 Cal.App.3d at page 349, 246 Cal. Rptr. 110 (cone. opn. of Blease, J.) found was insufficient to establish a beneficial interest. And it was not coupled with specific allegations of environmental harm as in Bozung v. Local Agency Formation Com., supra, at page 272, 118 Cal.Rptr. 249, 529 P.2d 1017.
When we add to this distance the fact that the two landfills lie on opposite sides of a natural geological divide, it becomes speculative at best whether Waste Management is threatened with non-water-quality environmental injury. Consequently, we conclude that Waste Management has not established a beneficial interest sufficient to pursue this action.

B. Citizen's Action
The matter of a citizen's action is a long established exception to the requirement of a personal beneficial interest. The exception applies where the question is one of public right and the object of the action is to enforce a public duty  in which case it is sufficient that the plaintiff *750 be interested as a citizen in having the laws executed and the public duty enforced. (Bd. of Soc. Welfare v. County of L.A. (1945) 27 Cal.2d 98, 100-101, 162 P.2d 627; see Common Cause v. Board of Supervisors, supra, 49 Cal.3d at p. 439, 261 Cal.Rptr. 574, 777 P.2d 610; Green v. Obledo, supra, 29 Cal.3d at p. 144, 172 Cal.Rptr. 206, 624 P.2d 256.)
This exception promotes a policy of guaranteeing citizens an opportunity to ensure that the purpose of legislation establishing a public right is not impaired or defeated by a governmental agency. (Green v. Obledo, supra, 29 Cal.3d at p. 144, 172 Cal.Rptr. 206, 624 P.2d 256.)
Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial interest. The policy underlying the exception may be outweighed by competing considerations of a more urgent nature. (Green v. Obledo, supra, 29 Cal.3d at p. 145, 172 Cal.Rptr. 206, 624 P.2d 256; see also Nowlin v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1529, 1538, 62 Cal.Rptr.2d 409.)
As this court explained in McDonald v. Stockton Met. Transit Dist. (1973) 36 Cal.App.3d 436, 111 Cal.Rptr. 637, the propriety of a citizen's suit requires a judicial balancing of interests, and the interest of a citizen may be considered sufficient when the public duty is sharp and the public need weighty. (Id. at p. 440, 111 Cal.Rptr. 637.) Thus, the court rejected a citizen's suit because the action would have intruded upon the remedial discretion of a public agency that was quite able to protect its own interests. (Id. at p. 443, 111 Cal.Rptr. 637.)
Carsten v. Psychology Examining Com., supra, 27 Cal.3d at pages 797, 166 Cal. Rptr. 844, 614 P.2d 276 to 802, held that a member of an administrative board could not pursue a citizen's action against the board upon which she sits. (See also Braude v. City of Los Angeles, supra, 226 Cal.App.3d at pp. 89-91, 276 Cal.Rptr. 256.) Among other things, the court noted "[h]er interest in the subject matter was piqued by service on the board, not by virtue of the neutrality of citizenship." (Carsten, supra, 27 Cal.3d at p. 799, 166 Cal.Rptr. 844, 614 P.2d 276; see also Laid-law Environmental Services, Inc. Local Assessment Com. v. County of Kern (1996) 44 Cal.App.4th 346, 354, 51 Cal.Rptr.2d 666.)
An initial, and significant, drawback to Waste Management's effort to maintain a citizen's action is the fact that it is not a citizen. Corporations generally are regarded as "persons." (See, e.g., Civ.Code, § 14; Pub. Resources Code, § 21066.) "Citizens" are natural persons who are born and/or reside within a community. (See Gov.Code, §§ 240-241.) Thus, corporations are not generally regarded as "citizens." (See Asbury Hospital v. Cass County (1945) 326 U.S. 207, 210-211, 66 S.Ct. 61, 63-64, 90 L.Ed. 6, 11; see 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 1, p. 511.)
A corporation may, in some instances, be accorded attributes of a citizen. (See Neirbo Co. v. Bethlehem Shipbuilding Corp. (1939) 308 U.S. 165, 169, 60 S.Ct. 153, 155, 84 L.Ed. 167, 171 [corporation treated as "citizen" for diversity of citizenship jurisdiction].) However, where a corporation attempts to maintain a citizen suit, it is appropriate to require the corporation to demonstrate it should be accorded the attributes of a citizen litigant, since it generally is to be expected that a corporation will act out of a concern for what is expedient for the attainment of corporate purposes (see Marsili v. Pacific Gas & Elec. Co. (1975) 51 Cal.App.3d 313, 322-325, 124 Cal.Rptr. 313), rather than by virtue of the neutrality of citizenship (see Carsten v. Psychology Examining Com., supra, 27 Cal.3d at p. 799, 166 Cal.Rptr. 844, 614 P.2d 276; Laidlaw Environmental Services, Inc., Local Assessment Com. v. County of Kern, supra, 44 Cal.App.4th at p. 354, 51 Cal.Rptr.2d 666).
*751 In our view, when a nonhuman entity claims the right to pursue a citizen suit, the issue must be resolved in light of the particular circumstances presented, including the strength of the nexus between the artificial entity and human beings and the context in which the dispute arises. (See Roberts v. Gulf Oil Corp. (1983) 147 Cal.App.3d 770, 797, 195 Cal.Rptr. 393.) Among the factors which may be considered are whether the corporation has demonstrated a continuing interest in or commitment to the subject matter of the public right being asserted (see Environmental Protection Information Center v. Department of Forestry & Fire Protection, supra, 43 Cal.App.4th at p. 1019, 50 Cal. Rptr.2d 892; American Friends Service Committee v. Procunier (1973) 33 Cal. App.3d 252, 255, 109 Cal.Rptr. 22); whether the entity is comprised of or represents individuals who would be beneficially interested in the action (see Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd., supra, 190 Cal.App.3d at pp. 1521-1522, 236 Cal.Rptr. 78); whether individual persons who are beneficially interested in the action would find it difficult or impossible to seek vindication of their own rights (see Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist. (1992) 11 Cal.App.4th 1513, 1519, 14 Cal.Rptr.2d 908; McDonald v. Stockton Met. Transit Dist, supra, 36 Cal.App.3d at p. 443, 111 Cal.Rptr. 637); and whether prosecution of the action as a citizen's suit by a corporation would conflict with other competing legislative policies (see Nowlin v. Department of Motor Vehicles, supra, 53 Cal.App.4th at pp. 1538-1539, 62 Cal.Rptr.2d 409).
Waste Management has failed to demonstrate that it should be allowed to pursue a citizen's action. It has shown no demonstrable interest in or commitment to the environmental concerns which are the essence of CEQA; rather, it is pursuing its own economic and competitive interests. It has not pointed to any beneficially interested persons whom it purports to represent. It has not demonstrated that persons who may be beneficially interested in the matter would find it difficult or impossible to vindicate their own interests. Moreover, to permit a for-profit corporation to maintain a citizen's action for personal economic and competitive purposes, rather than out of demonstrable environmental concerns, would conflict with the legislatively declared policy that environmental review be carried out in the most efficient and expeditious manner in order to conserve financial, governmental, physical, and social resources for application toward mitigation of actual significant effects on the environment. (Pub. Resources Code, § 21003, subd. (f).)
Consequently, we conclude Waste Management may not maintain this litigation as a citizen's action.

C. Public Resources Code section 21177, subdivision (b)

"No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (Pub. Resources Code, § 21177, subd. (b).)
Relying on that section, Waste Management contends it has standing to pursue this action because it objected to the revision of Browning-Ferris's permit before the Waste Board. We disagree.
Public Resources Code section 21177 is a statutorily imposed requirement of the exhaustion of administrative remedies before bringing a judicial action. Exhaustion of administrative remedies is an entirely separate issue from the requirement of standing to pursue a judicial action. (Murrieta Valley Unified School Dist. v. County of Riverside (1991) 228 Cal.App.3d 1212, 1224, 279 Cal.Rptr. 421; California Aviation Council v. County of Amador, supra, 200 Cal.App.3d at p. 349, 246 Cal.Rptr. 110, cone. op. of Blease, J.) *752 The exhaustion of administrative remedies does not automatically confer standing to seek judicial review, and nothing in Public Resources Code section 21177 states or implies otherwise.

D. Taxpayer Action
Code of Civil Procedure section 526a provides in pertinent part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the State, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."
The purpose of this statute, which applies to citizen and corporate taxpayers alike, is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement. (Blair v. Pitchess (1971) 5 Cal.3d 258, 267-268, 96 Cal.Rptr. 42, 486 P.2d 1242.) To this end, the statute has been construed liberally. (Ibid.) Therefore, although by its terms the statute applies to local governments, it has been judicially extended to all state and local agencies and officials. (Farley v. Cory (1978) 78 Cal.App.3d 583, 589, 144 Cal.Rptr. 923; Los Altos Property Choners Assn. v. Hutcheon (1977) 69 Cal.App.3d 22, 30, 137 Cal.Rptr. 775.) While the statute speaks of injunctive relief, taxpayer standing has been extended to actions for declaratory relief, mandamus and, in some circumstances, damages. (Van Atta v. Scott (1980) 27 Cal.3d 424, 449-450, 166 Cal.Rptr. 149, 613 P.2d 210.)
Regardless of liberal construction, the essence of a taxpayer action remains an illegal or wasteful expenditure of public funds or damage to public property. (Fiske v. Gillespie (1988) 200 Cal.App.3d 1243, 1246, 246 Cal.Rptr. 552.) The taxpayer action must involve an actual or threatened expenditure of public funds. (Ibid.)
General allegations, innuendo, and legal conclusions are not sufficient (Sagaser v. McCarthy (1986) 176 Cal.App.3d 288, 310, 221 Cal.Rptr. 746); rather, the plaintiff must cite specific facts and reasons for a belief that some illegal expenditure or injury to the public fisc is occurring or will occur. (Ibid.; see also Fort Emory Cove Boatowners Assn. v. Cowett (1990) 221 Cal. App.3d 508, 515, 270 Cal.Rptr. 527.)
Although Waste Management alleges it is a taxpayer, it has not otherwise attempted to state taxpayer standing within the meaning of Code of Civil Procedure section 526a.
Consequently, we find Waste Management's taxpayer status is insufficient to confer standing.

E. Summary
Throughout these proceedings, it has been apparent Waste Management is a for-profit corporation which has been pursuing this action for commercial and competitive purposes. A corporation cannot be condemned for pursuing its own economic interests, but indirect financial interests are not an environmental interest sufficient to establish standing to pursue a CEQA action against a competitor. Having reviewed its claims, we conclude the action should have been dismissed because Waste Management has not established standing to pursue the relief requested.
In light of our conclusion, we deny as moot Waste Management's motion to strike portions of the reply brief filed by Browning-Ferris and the County, its request for partial reconsideration of this court's order taking judicial notice of certain material, and its "motion to strike extra-record declaration of Ron Gee cited in appellants' opening brief."

*753 DISPOSITION
The judgment is reversed, and the matter is remanded to the trial court with directions to dismiss the action. Having served its purpose, the stay of the trial court's judgment, previously issued by this court, is discharged upon the finality of this opinion. Appellants shall recover their costs on appeal. (Cal. Rules of Court, rule 26(a).)
NICHOLSON, J., and CALLAHAN, J., concur.
NOTES
[1] "Designated waste" is a water quality control concept. It refers to "[h]azardous waste that has been granted a variance from hazardous waste management requirements [under the Health and Safety Code]" or "[n]onhazardous waste that consists of, or contains, pollutants that, under ambient environmental conditions at a waste management unit, could be released in concentrations exceeding applicable water quality objectives or that could reasonably be expected to affect beneficial uses of the waters of the state as contained in the appropriate state water quality control plan." (Wat.Code, § 13173.) The term "designated waste" has no meaning except with respect to water quality control objectives.
[2] At a hearing before the Waste Board, the County suggested that the decision to require CEQA review in connection with the Waste Management matter was based upon a number of things, including the difference in approaches between the Central Valley and the San Francisco Bay regional water boards, the view that Waste Management's request was part of a larger project which included added acreage and expanded use, and the view of county staff "that there were other activities, other aspects, larger aspects of the project with the Altamont revision."

As we shall point out in subsequent portions of this opinion, the fact that Waste Management was required to undergo CEQA review is irrelevant here, and the governmental defendants were not required to defend that decision in order to justify the decision to forgo CEQA review with respect to Browning-Ferris.
[3] A permit revision rather than modification may be required where the operator of a solid waste facility proposes a significant change in design or operation which is not authorized by the existing permit. (Pub. Resources Code, § 44004; Cal.Code Regs., tit. 14, former § 18211, applicable when this dispute arose.) A permit revision does not necessarily require CEQA review. (Pub. Resources Code, § 44004, subds. (c)(2), (d)(4).) However, the CEQA exemption applied to the Browning-Ferris permit modification by the Waste Board, and the County contemplates minor alterations with negligible or no expansion of use. (Cal.Code Regs., tit. 14, § 15301.) A conclusion that revision is required would be based on a finding of a significant change in design or operation and would appear to render that particular CEQA exemption inapplicable.
[4] The Waste Management permit revision process involved different parties, different property, and different issues from the current matter. There is no issue preclusion effect, such as res judicata or collateral estoppel, that is applicable here. (See Mala v. City of Los Angeles (1993) 20 Cal.App.4th 141, 149, 24 Cal.Rptr.2d 314; Harman v. Mono General Hospital (1982) 131 Cal.App.3d 607, 614, 182 Cal.Rptr. 570.) There is no principle of due process or of equal protection that would entitle Waste Management to insist that competitors be subjected to a regulatory process which otherwise may be inapplicable, merely because Waste Management was subjected to the process. With respect to the decision requiring Waste Management to undergo CEQA review, Waste Management's remedy was to seek judicial review of that decision. Insofar as Browning-Ferris is concerned, the matter of Waste Management's permit revision and CEQA review is irrelevant.